**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David POND, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 2003.

Filed March 25, 2004.

Ernest D. Preate, Jr., Scranton, for appellant.

Ellen Goffer, Asst. Dist. Atty., Scranton, for Com., appellee.

BEFORE: KLEIN, BENDER and OLSZEWSKI, JJ.

OPINION BY BENDER, J.:

¶ 1 David Pond appeals from the judgment of sentence of six to twenty-three months' imprisonment imposed following his conviction for violating the verification of residence provisions of the Registration of Sexual Offenders statute, as amended, commonly referred to as Megan's Law II. *See* 42 Pa.C.S. §§ 9791–9799.7 (as amended May 10, 2000, effective July 9, 2000). We reverse the judgment of sentence.

¶ 2 A brief factual and procedural history follows. In 1990, Appellant was convicted of sexual crimes falling under Megan's Law. He served his maximum prison sentence and was released on April 15, 2000. On the day before Appellant's release, an employee of the prison, Vito Casella, provided information to Appellant with regard to the mandatory registration provisions of Megan's Law[1] and

---

1. The prior version of Megan's Law was in effect at the time of Appellant's release and

registered Appellant as a sex offender. *See* N.T. Trial, 10/7/02, at 22–25. Mr. Casella informed Appellant that he had to report changes of address to the Pennsylvania State Police within ten calendar days of moving, as per Megan's Law. *Id.* at 24–25. Appellant read and signed the registration notification form. *Id.* at 26.

¶ 3 State Trooper Sean Doran was on duty at the State Police barracks on September 20, 2000, when Appellant voluntarily arrived to complete a change of address form. *Id.* at 40–41, 49. Although Trooper Doran did not have a specific recollection of Appellant coming in to do this, Trooper Doran testified that it was his normal practice to fill out the form, including the former and new address information, based on information provided by the offender, following which the offender signs the form. *Id.* at 42–44, 47. Trooper Doran testified that he could not have made a mistake on the form because he filled out the form based on information provided by Appellant and then Appellant signed it. *Id.* at 43–44. Appellant was not provided a copy of the form and so, as he contends, he was not aware of a mistake on the form until the police arrived to arrest him for violation of the Megan's Law II address verification provisions. *Id.* at 66, 85–86.

¶ 4 The form completed by Trooper Doran and signed by Appellant was presented at trial in this matter. *Id.* at 40. It revealed that Trooper Doran wrote Appellant's former address as the state correctional institution at Waymart, where Appellant was formerly incarcerated, although Trooper Doran admitted that he knew Appellant was not incarcerated when he arrived at the barracks to com-

plete the change of address form. *Id.* at 49–50. In the new address area of the form, Trooper Doran wrote down a North Main Avenue address in Scranton. Curiously, the former address area of the form indicated the same phone number as the new address area of the form. *Id.* at 52. The number included a Scranton area code, even though the state correctional institution is not in Scranton. *Id.* Additionally, the change of address form indicated the same old and new addresses as the initial registration form filled-out just prior to Appellant's release from prison.

¶ 5 A Scranton detective, Victor Sanguiliano, testified that on November 13, 2001, he received a report from the Megan's Law section of the Pennsylvania State Police indicating that Appellant may have failed to properly verify his address. *Id.* at 79. The report indicated that Appellant's last known address was the North Main Avenue address in Scranton. *Id.* at 80. Detective Sanguiliano went to that address and discovered that Appellant was not residing there, so he went to the post office, which, as of September 12, 2000, had a forwarding address listed for Appellant in Scranton at 1725A Stafford Avenue. *Id.* Detective Sanguiliano went to the Stafford Avenue address and discovered that Appellant was residing there. *Id.* at 81. He discovered that this last address change was not properly registered by Appellant and, therefore, Appellant was arrested. *Id.* at 81–82. Specifically, Appellant was charged with violating sections 9796(b) (pertaining to annual verification of residence) and 9796(c) (pertaining to verification of address changes) of Megan's Law

initial registration. We shall refer to that version as Megan's Law and to the amended version as Megan's Law II, as indicated above. As further described herein, the amended version, Megan's Law II, was in

effect at the time of the alleged violation in this case. Moreover, Appellant relies on the amended version, Megan's Law II, throughout his brief.

II, both of which are graded as third-degree felonies.

¶ 6 A jury trial was held on October 7 and 8, 2002. At trial, the Commonwealth argued that failure to properly register is a strict liability crime and an allegation of mistake is no defense. Additionally, the trial court gave the following jury instruction:

> The defendant's theory of the case is that he provided that information, but the police officer erroneously marked that down on the form. A mistake as to a matter of fact is only a defense if it negates the intent of the defendant as required by law. In the charge against the defendant the Commonwealth need not prove a specific intent. If he were to have indicated that he mistakenly gave the wrong address that is not a defense to the case.

N.T. Trial, 10/8/02, at 111–112. Appellant's trial counsel did not object to this charge. The jury found Appellant guilty of violating the verification of residence provision at section 9796(c) of Megan's Law II. Appellant, represented by new counsel, filed a post trial motion challenging the above jury instruction and asserting trial counsel's ineffectiveness for failing to object to the instruction and similar comments made by the Commonwealth.

Essentially, Appellant's position is that the Commonwealth failed to present evidence with regard to the *mens rea* required to establish the crime of failure to properly verify one's address under Megan's Law II and, in turn, that mistake is a defense for the failure to properly register. The trial court subsequently denied Appellant's post trial motion. Appellant filed the instant, timely appeal.

¶ 7 Appellant raises two issues in this appeal. Appellant first argues that there is a *mens rea* requirement under section 9796 of Megan's Law II for the crime of failing to properly verify one's address. Within this first issue, Appellant also argues that the Commonwealth, proceeding on the incorrect assumption that there is no *mens rea* element, failed to present sufficient evidence to establish a *mens rea* underlying the incorrect current address noted on the change of address form completed by Trooper Doran based on information provided by Appellant.[2] This issue is one of first impression in Pennsylvania, that is, whether the failure to properly verify one's address under Megan's Law II requires a showing of intent, or some other degree of *mens rea*, on the part of the offender. Accordingly, we must examine the statutory language of Megan's Law II.

2. We note the standard of review with regard to sufficiency of the evidence claims:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so

> weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or [sic] proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

> *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003) (citation omitted).

¶ 8 Appellant was not deemed a "sexually violent predator" under Megan's Law II. Rather, Appellant falls into the general category of "sexual offender," which has somewhat different and arguably less onerous registration requirements than those applicable to sexually violent predators. *See* 42 Pa.C.S. § 9792 (defining "offender" as someone "required to register under section 9795.1(a), (b)(1) or (2)[,]" which excludes those deemed sexually violent predators under the statute). *Compare* 42 Pa.C.S. § 9795.1(a) (requiring registration for ten-year period for arguably less serious crimes) *with* § 9795.1(b)(1)-(3) (requiring lifetime registration for multiple convictions, more serious crimes, and those deemed to be sexually violent predators). Appellant is required to register for ten years pursuant to section 9795.1(a) of Megan's Law II.

¶ 9 Additionally, under Megan's Law II, sexual offenders must register with the Pennsylvania State Police upon release from incarceration and must provide information pertaining to all current or intended residences. *Id.* at § 9795.2(a)(1) ("Registration procedures and applicability"). Sexual offenders must inform the Pennsylvania State Police within ten days of "[a]ny change of residence or establishment of an additional residence or residences...." *Id.* at § 9795.2(a)(2)(i). As in Appellant's case, where the sexual offender has completed serving his maximum term of imprisonment for the underlying sexual offense, the Department of Corrections must collect registration information, including intended residence, prior to the offender's release from prison. *Id.* at § 9795.2(a)(4)(i). The Department of Corrections then forwards such information to the Pennsylvania State Police. *Id.* If the offender to be released from prison after serving his maximum term refuses to provide registration information, the Department of Corrections must so notify the Pennsylvania State Police and provide the offender's expected release date, time and location. *Id.* at § 9795.2(a)(4)(ii). Such is not the case here, as Appellant did not refuse to provide information prior to his release. The issue is, rather, the incorrect change of address information memorialized by Trooper Doran several months following Appellant's release.

¶ 10 Accordingly, Appellant was convicted under the following section of Megan's Law II:

### § 9796.   Verification of residence

. . .

**(b) Annual verification.**—The Pennsylvania State Police shall verify the residence of offenders through the use of a nonforwardable verification form. For the period of registration required by section 9795.1, the offender shall appear within ten days of receipt of the form at any Pennsylvania State Police station to complete the verification form and to be photographed.

**(c) Notification of law enforcement agencies of change of residence.**—A change of residence of an offender or sexually violent predator required to register under this subchapter reported to the Pennsylvania State Police shall be immediately reported by the Pennsylvania State Police to the appropriate law enforcement agency having jurisdiction of the offender's or the sexually violent predator's new place of residence.....

**(d) Failure to provide verification.**—Where an offender or sexually violent predator fails to provide verification of residence within the ten-day period as set forth in this section, the Pennsylvania State Police shall immediately notify the municipal police department of the offender's or the sexually violent predator's last verified residence. The local municipal police shall locate the

offender or sexually violent predator and arrest him for violating this section. The Pennsylvania State Police shall assume responsibility for locating the offender or sexually violent predator and arresting him in jurisdictions where no municipal police jurisdiction exits. The Pennsylvania State Police shall assist any municipal police department requesting assistance with locating and arresting an offender or sexually violent predator who fails to verify his residence.

**(e) Penalty. -**

*(1) Any individual subject to registration under section 9795.1(a) who fails to verify his residence or be photographed as required in this section commits a felony of the third degree.*

(2) Any individual subject to registration under section 9795.1(b)(1), (2) or (3) who fails to verify his residence or to be photographed as required in this section commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration of up to the individual's lifetime.

42 Pa.C.S. § 9796 (emphasis to subsection (e)(1) added). The jury found Appellant guilty of violating subsection (c), above. Of the above two penalty provisions, subsection (e)(1) applies to sexual offenders like Appellant who are subject to the ten-year registration requirement under section 9795.1(a). Penalty subsection (e)(2), which was deemed unconstitutional but severable by our Supreme Court, applied to those subject to lifetime registration under section 9795.1(b), such as those deemed to be sexually violent predators. *Commonwealth v. Williams* 574 Pa. 487, 832 A.2d 962 (2003).[3] In the instant case, our focus is on penalty subsection (e)(1), which is applicable to Appellant and which was not addressed in *Williams*.

¶ 11 The issue in this appeal is whether a conviction under subsection (e)(1) requires the Commonwealth to establish some degree of *mens rea* on the part of the offender. The statute is silent on this issue. Accordingly, we turn to the Crimes Code, 18 Pa.C.S. § 302(c) ("General requirements of culpability"), which provides that "[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." However, this rule does not apply to "offenses defined by statutes other than [the Crimes Code], in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof *plainly* appears." 18 Pa.C.S. § 305(a)(2) (emphasis added).

¶ 12 Additionally, under section 304 of the Crimes Code, "ignorance or mistake

---

**3.** Our Supreme Court concluded, more specifically, that penalty sections 9795.2(d)(2) and 9796(e)(2) were unconstitutional insofar as they applied to sexually violent predators because, *inter alia*, the potential penalty of life imprisonment was in excess of what was needed to enforce registration and verification compliance. *Williams*, 832 A.2d at 985, 985 n. 26. However, the *Williams* Court further concluded that these particular subsections were severable from the rest of Megan's Law II. *Id.* at 986. Notably, the Court indicated that, although the registration, notification, and counseling provisions imposed on an offender deemed to be a sexually violent predator were non-punitive, the penalty provisions imposed for violation of these provisions were, of course, punitive in nature. *Id.* at 985–86. Similarly, the parties in the instant case do not contest the fact that the penalty provision under section 9796(e)(1), is punitive in nature and a conviction under this section must therefore be preceded by a criminal proceeding in which the full panoply of due process protections are afforded.

as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if ... the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required a[sic] establish a material element of the offense...." 18 Pa.C.S. § 304(1). Thus, if violation of the Megan's Law II verification provisions include a *mens rea* element, then the accused is entitled to assert the defense of mistake.

¶ 13 The offense at issue herein is defined by Megan's Law II, which is not part of the Crimes Code. Accordingly, we must determine whether Megan's Law II plainly indicates a legislative intent to impose absolute liability for violation of the verification provisions. The legislative intent underlying Megan's Law II is codified at 42 Pa.C.S. § 9791(a) and (b), and includes, for example, statements pertaining to the overriding goal of protection of the public. However, contrary to the Commonwealth's argument in this appeal, no expression of legislative intent or purpose to impose absolute or strict liability for failure to properly register plainly appears in the statute. Thus, section 302(c) of the Crimes Code is applicable and, in a prosecution for violation of the verification provisions of Megan's Law II, the Commonwealth must establish that the accused's failure to properly verify his address was intentional, knowing or reckless, as such degrees of culpability are defined by 18 Pa.C.S. § 302(b)(1), (2), and (3), respectfully. In other words, there is a *mens rea* element for failure to properly verify one's address (or other required information) under section 9796 of Megan's Law II.

¶ 14 Our holding is supported further by case law. For example, in *Commonwealth v. Woosnam*, 819 A.2d 1198 (Pa.Super.2003), the defendant was convicted of leaving the scene of an accident involving death or injury, graded as a third degree felony. However, on appeal, we remanded for a new trial after concluding that the trial court erred by failing to instruct the jury that the crime of leaving the scene of an accident involving death or injury requires the Commonwealth to establish *mens rea* on the part of the defendant, specifically, that the defendant knew or should have known that she had been involved in an accident, even though the criminal statute was silent on the issue of a *mens rea* element. *See also Commonwealth v. Parmar*, 551 Pa. 318, 710 A.2d 1083, 1089 (1998) (Zappala, J., opinion in support of affirmance) (describing application of Crimes Code section 302 to statute outside of Crimes Code that did not plainly indicate legislature's intent to make crime strict liability). *Cf. Commonwealth v. Robinson*, 497 Pa. 49, 438 A.2d 964 (1981) (upholding as constitutional the statutory rape law that plainly evidenced legislature's intent to make violation thereof a strict liability offense where victim is less than fourteen years of age, where the statute specifically indicated that mistake as to age was not a defense, *see infra*).

¶ 15 Moreover, as a general principle, "[a]bsolute criminal liability statutes are an exception to the centuries old philosophy of criminal law that imposed criminal responsibility only for an 'act coupled with moral culpability.'" *Parmar*, 710 A.2d at 1089 (quoting *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344, 1348 (1982)). "A criminal statute that imposes absolute liability typically involves regulation of traffic or liquor laws." *Id.* *See also Robinson, supra* (involving statutory rape law). "[S]uch so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulation of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." *Parmar*, 710 at

1090 (quoting *Commonwealth v. Koc-zwara*, 397 Pa. 575, 155 A.2d 825, 827–28 (1959)). Along these same lines, an additional factor to consider when determining if the legislature intended to eliminate the *mens rea* requirement from a criminal statute is whether the statute imposes serious penalties. *Id.* The more serious the penalty, such as a lengthy term of imprisonment, the more likely it is that the legislature did not intend to eliminate the *mens rea* requirement (unless the legislature plainly indicates otherwise in the language of the statute, as for statutory rape). *See id.*

■ ¶ 16 In the instant case, not only does section 302 of the Crimes Code apply to provide the *mens rea* element of the crime of failure to properly verify one's address under Megan's Law II, but the nature of the offense and the potentially severe penalties are further indicia that the legislature did not intend to do away with the *mens rea* element and make the failure to properly verify information under Megan's Law II a strict liability crime.[4]

■ ¶ 17 Accordingly, we must determine if the Commonwealth's failure to recognize the *mens rea* element of these crimes resulted in its presentation of sufficient evidence to the jury such that the jury could have, nevertheless, inferred a culpable mind on the part of Appellant. The distinction between sufficient and insufficient evidence of *mens rea* is important because if there was sufficient evidence despite the Commonwealth's failure to recognize a *mens rea* element, then we should remand for a new trial because the only error we would be able to find would be an instructional error. *See Common-*

*wealth v. Myers*, 376 Pa.Super. 41, 545 A.2d 309, 315 (1988) (remedy for prejudicially erroneous jury charge is new trial). However, if there was insufficient evidence of the *mens rea* element, then we would have to reverse the judgment of sentence. *See Commonwealth v. Merrick*, 338 Pa.Super. 495, 488 A.2d 1, 4 (1985) ("If the verdict was against the weight of the evidence the only relief we may grant appellant is a new trial. If, however, the evidence were insufficient to sustain the verdict, we are required to discharge the appellant.") (citations omitted).

■ ¶ 18 "Often, intent cannot be proven directly but must be inferred from examination of the facts and circumstances of the case." *Commonwealth v. Willetts*, 277 Pa.Super. 538, 419 A.2d 1280, 1281 (1980). We must look at the totality of the circumstances to determine if from Appellant's actions we can infer the requisite *mens rea* for failure to properly change his address. *See id.* (concluding that under totality of circumstances, jury could infer guilty mind on appellant's charge of attempted burglary where facts established that appellant attempted to break a padlock on a garage, he made this attempt at a late hour, and he was seen fleeing from site of crime when police arrived). When examining the totality of the circumstances to determine if there is sufficient evidence from which a jury could infer the requisite *mens rea*, we must, as with any sufficiency analysis, examine "all record evidence and all reasonable inferences therefrom." *In the Interest of A.C.*, 763 A.2d 889, 890 (Pa.Super.2000). "We will only reverse if the trier of fact could not reasonably have found that the evidence, when viewed in

---

4. Also in his first issue, Appellant argued that, if we determined that a *mens rea* element was not required, then the penalty provision is unconstitutional. We do not reach this con- stitutional issue because, as explained above, we conclude that a *mens rea* element is indeed required.

the light most favorable to the Commonwealth as verdict winner, was sufficient to prove guilt beyond a · reasonable doubt." *Id.*

¶ 19 Viewing the totality of the circumstances presented in this case, we conclude that the Commonwealth, proceeding on the erroneous assumption that violation of the verification provisions was a strict liability crime, failed to present sufficient evidence from which a jury could infer that Appellant had the requisite *mens rea.* For example, and as described in detail *supra,* Appellant voluntarily reported to the State Police barracks to complete a change of address form, but did not get a copy to check for mistakes, and Trooper Doran, acting as a stenographer, failed to notice obvious mistakes on the form. Accordingly, we agree with Appellant that the Commonwealth did not present sufficient evidence to sustain his conviction under section 9796.

■■■ ¶ 20 In his second issue, Appellant argues that his trial attorney provided ineffective assistance of counsel (IAC) by failing to object to the trial court's instruction that mistake is not a defense to the crime of failing to properly verify one's address under Megan's Law II. We must first determine if we can properly review this issue on direct appeal in light of our Supreme Court's decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). In *Grant,* our Supreme Court announced the "general rule, [that] a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Grant,* 813 A.2d at 738. However, in some instances, an IAC claim may be reviewed on direct appeal where the claim was raised in the trial court and a record with regard to the issue was sufficiently developed in the trial court such that the appellate court could conduct meaningful appellate review without

having to rely on sources or materials outside of the trial court record. *See Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 853–54 (2003) (permitting review of IAC claim on direct appeal where issue was properly raised and preserved in the trial court in a post sentence motion and the trial court held an evidentiary hearing). The record in the instant case is well-developed with regard to Appellant's IAC claim. Indeed, Appellant raised the issue in his post trial motion and the trial court held an evidentiary hearing with regard thereto. Accordingly, we will proceed to review the IAC issue in light of the availability of a well-developed record on the IAC issue.

¶ 21 We note initially that:

Trial counsel is presumed to be effective and Appellant has the burden of proving otherwise. In reviewing ineffectiveness claims, we use a three-pronged test: an appellant must demonstrate: 1) the issue underlying the charge of ineffectiveness is of arguable merit; 2) the appellant's counsel did not have a reasonable basis for the action aimed at promoting the appellant's interests; and 3) a showing that counsel's ineffectiveness prejudiced the appellant's case.

*Commonwealth v. Halley,* 839 A.2d 392, 396 (Pa.Super.2003) (citations omitted).

■■■ ¶ 22 Appellant's IAC claim meets all three prongs of the above test. Not only did trial counsel acquiesce when the Commonwealth argued, in its closing argument to the jury, that the crime of failing to properly verify information under Megan's Law II is a strict liability crime and mistake is not a defense thereto, but trial counsel also failed to object when the trial court instructed the jury in the same manner. As per our holding, *supra,* we conclude that the trial court's instruction to the jury that the Commonwealth "need not prove specific intent" and if Appellant

"were to have indicated that he mistakenly gave the wrong address that is not a defense to the case" was erroneous. N.T. Trial, 10/8/02, at 111–112. Trial counsel's failure to object to this instruction constituted IAC.

¶ 23 Since there was insufficient evidence to sustain the convictions herein, we reverse the judgment of sentence.

¶ 24 Judgment of sentence reversed; jurisdiction relinquished.

¶ 25 Judge OLSZEWSKI notes his dissent.