**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Lili Mararita WINGER, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 19, 2008.

Filed Sept. 12, 2008.

Lance T. Marshall, Assistant District Attorney, Bellefonte, for Commonwealth, appellant.

Kelley Gillette–Walker, State College, for appellee.

BEFORE: GANTMAN, SHOGAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, asks us to determine whether the Centre County Court of Common Pleas erred when it granted *habeas corpus* relief and dismissed the charge, filed against Appellee, Lili Mararita Winger, of endangering the welfare of children.[1] We hold the trial court erred when it dismissed the charge, because the Commonwealth produced probable cause to establish a *prima facie* case for that offense. Accordingly, we reverse and remand for further proceedings.

¶ 2 The trial court opinion fully and correctly sets forth the relevant facts of this appeal as follows:

On May 13, 2007, [Appellee] was providing daycare service for a child. [Appel-

---

1. 18 Pa.C.S.A. § 4304.

lee] took the child to a Mother's Day picnic at [Appellee's] father's house. The child's mother arrived at [Appellee's] residence to pick up the child and could not find [Appellee] or the child. The mother contacted the police.

Officer Tyler Jolley responded to the mother's call and arrived at [Appellee's] residence. Some time later, [Appellee] returned to her residence with the child. The child was properly restrained in her car safety seat in [Appellee's] minivan when [Appellee] arrived. [Appellee] apologized to the child's mother for the misunderstanding. During this conversation, the Officer detected an odor of alcohol on [Appellee's] breath.

The Officer conducted field sobriety tests which [Appellee] failed. He could not get a suitable breath result and transported [Appellee] to Mount Nittany Medical Center for a blood test. The blood test showed a blood alcohol content [BAC] of .252%.

The Officer testified that [Appellee] parked illegally in front of her residence, but he did not observe any other Motor Vehicle Violations while [Appellee] was operating her vehicle. The Officer also testified that the child was properly restrained in her car safety seat and was not in any distress when she arrived in [Appellee's] minivan. [Appellee] was subsequently charged with Driving Under the Influence of Alcohol and Endangering Welfare of Children.

(Trial Court Opinion, filed November 1, 2007, at 1–2). By order entered October 31, 2007, the court granted Appellee's petition for writ of *habeas corpus* and dismissed the endangering the welfare of children charge. On November 5, 2007, the Commonwealth timely filed its notice of appeal. That same day, the court ordered the Commonwealth to file a concise statement of matters complained of on appeal,

pursuant to Rule Pa.R.A.P.1925(b). The Commonwealth timely filed its Rule 1925(b) statement on November 16, 2007.

¶ 3 The Commonwealth raises one issue for our review:

DID THE COMMONWEALTH PROVE A *PRIMA FACIE* CASE OF ENDANGERING THE WELFARE OF CHILD[REN], 18 PA.C.S.A. § [4304], WHEN [APPELLEE] DROVE A MOTOR VEHICLE WITH A .252% BAC AND [INSIDE] HER MOTOR VEHICLE AT THE TIME OF DRIVING WAS A TWO–YEAR OLD CHILD?

(Commonwealth's Brief at 4).

■ ¶ 4 The Commonwealth asserts the juvenile statutes are broadly drafted to protect children against an expansive range of conduct. To determine whether a defendant's conduct falls within 18 Pa. C.S.A. § 4304, the court should use the standard of the community's common sense. The Commonwealth claims it presented evidence that Appellee was charged with the duty of primary care of the child, and that Appellee drove the child in Appellee's minivan when Appellee had a BAC of .252%. The Commonwealth further contends that Appellee's placement of the child in a safety seat was inadequate to protect the child's welfare under the circumstances. The Commonwealth concludes the court erred when it decided the Commonwealth had failed to establish a *prima facie* case of endangering the welfare of children. We agree.

¶ 5 Appellate review of an order granting *habeas corpus* relief is subject to the following principles:

The decision to grant or deny a petition for writ of [*habeas corpus*] will be reversed on appeal only for a manifest abuse of discretion.... Our scope of review is limited to deciding whether a

*prima facie* case was established.... [T]he Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in **allowing the case to go to the jury.** When deciding whether a *prima facie* case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict. The standard clearly does not require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage.

*Commonwealth v. Williams,* 911 A.2d 548, 550 (Pa.Super.2006) (quoting *Commonwealth v. James,* 863 A.2d 1179, 1182 (Pa.Super.2004) (*en banc*) (internal citations omitted)). *See also Commonwealth v. Patrick,* 933 A.2d 1043, 1045 (Pa.Super.2007) (*en banc*), *appeal denied,* 596 Pa. 705, 940 A.2d 364 (2007) (stating *prima facie* standard requires evidence of each and every element of crime charged; weight and merit of evidence are not factors at this stage of proceedings).

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Hunt,* 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc*), *appeal denied,* 583 Pa. 659, 875 A.2d 1073 (2005) (internal citations and quotation marks omitted). *See also Commonwealth v. Har-*

*dy,* 918 A.2d 766, 776 (Pa.Super.2007), *appeal denied,* 596 Pa. 703, 940 A.2d 362 (2008).

¶ 6 In general, "statutes pertaining to juveniles ... are basically protective in nature and thus are necessarily drawn to cover a broad range of conduct in order to safeguard the welfare and security of our children." *Commonwealth v. Retkofsky,* 860 A.2d 1098, 1099 (Pa.Super.2004).

¶ 7 The juvenile statute at issue provides in relevant part as follows:

**§ 4304. Endangering welfare of children**

**(a) Offense defined.—**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

\* \* \*

(3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

\* \* \*

18 Pa.C.S.A. § 4304(1), (3). "Section 4304 is a comprehensive provision designed to penalize those who knowingly breach a legal duty to protect the well-being of children who are entrusted to their care." *Commonwealth v. Pahel,* 456 Pa.Super. 159, 689 A.2d 963, 964 (1997). Whether particular conduct falls under this statute must be determined "within the context of the 'common sense of the community.'" *Retkofsky, supra.* Referring to Section 4304, this Court reiterated:

[T]he purpose of juvenile statutes, as the one at issue here, is basically protective in nature. Consequently these statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be circumscribed, these statutes are necessarily drawn broadly. It clearly would be impossible to enumerate every particular type of adult conduct against which society wants its children protected. We have therefore sanctioned statutes pertaining to juveniles which proscribe conduct producing or tending to produce a certain defined result ... rather than itemizing every undesirable type of conduct.

\* \* \*

The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.

*Commonwealth v. Wallace,* 817 A.2d 485, 491 (Pa.Super.2002), *appeal denied,* 574 Pa. 774, 833 A.2d 143 (2003), *certiorari denied,* 541 U.S. 907, 124 S.Ct. 1610, 158 L.Ed.2d 251 (2004) (quoting *Commonwealth v. Mack,* 467 Pa. 613, 617, 359 A.2d 770, 772 (1976)).

¶ 8 For purposes of this appeal, the Commonwealth had to show evidence of probable cause on each of the following:

1) the accused must be aware of ... her duty to protect the child; 2) the accused must be aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused either must have failed to act or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Retkofsky, supra* at 1099–1100 (internal citations and quotation marks omitted). *See also Pahel, supra* at 964.

¶ 9 "The *mens rea* required for [Section 4304] is a knowing violation of the accused's duty of care to the minor-victim." *Commonwealth v. Martir,* 712 A.2d 327, 328 (Pa.Super.1998). "Often, intent cannot be proven directly but must be inferred from examination of the facts and circumstances of the case." *Commonwealth v. Pond,* 846 A.2d 699, 707 (Pa.Super.2004) (citation omitted). Therefore, the Commonwealth is not required to provide direct proof of Appellee's frame of mind. *Commonwealth v. Matthews,* 870 A.2d 924, 928–29 (Pa.Super.2005) (*en banc*), *affirmed,* 589 Pa. 487, 909 A.2d 1254 (2006). Instead, the Commonwealth can demonstrate its case through circumstantial evidence. *Id.* We can look at the totality of the circumstances to determine if Appellant's actions gave rise to a reasonable inference of the requisite *mens rea. Pond, supra.*

¶ 10 Although a violation of the accused's duty of care under Section 4304 includes exposing a child to danger or putting a child at risk of harm:

The "statute does *not* require the actual infliction of physical injury. Nor does it state a requirement that the child or children be in imminent threat of physical harm. Rather it is the awareness by the accused that [her] violation of [her] duty of care, protection and support is practically certain to result in the endangerment to [her] children's welfare, which is proscribed by the statute.

*Wallace, supra* at 491–92. Further, a person must take affirmative, reasonable steps to protect the child:

The affirmative performance required by [Section] 4304 cannot be met simply by showing any step at all toward preventing harm, however incomplete or ineffectual. An act which will negate intent is not necessarily one which will provide a successful outcome. However, the person charged with the duty of care is required to take steps that are reasonably calculated to achieve success. Otherwise, the meaning of the duty of care is eviscerated.

*Pahel, supra* at 964.

¶ 11 Instantly, while providing daycare for a child under the age of eighteen, Appellee drove the child to a picnic at Appellee's father's house. When the child's mother arrived at Appellee's house to retrieve the child, neither Appellee nor the child was present. Therefore, the child's mother called the police. Later, Appellee returned home with the child, who was restrained in a car seat and appeared unharmed. Appellee apologized to the mother for keeping the child out longer than expected. While Appellee was apologizing, the police officer smelled alcohol on Appellee's breath. Thereafter, the officer performed field sobriety tests with Appellee, which Appellee failed. Because the officer was unable to get an effective breathalyzer result, the officer took Appellee to a hospital, where the medical staff conducted a blood test. Appellee's BAC was .252%.

¶ 12 As a result of this conduct, the Commonwealth charged Appellee with driving under the influence[2] and endangering the welfare of children. Appellee was bound over for trial on both charges. In dismissing the endangering charge, the trial court said:

Regarding the first prong, there is evidence that [Appellee], as the child's daycare provider, was aware of her duty to protect the child.

Regarding the second prong, the Commonwealth has not given evidence that [Appellee] knowingly placed the child in circumstances which could threaten the child's physical or psychological welfare. In *Commonwealth v. Mastromatteo*, 719 A.2d 1081 (Pa.Super.1998), [Appellee] was charged with reckless endangerment. [Appellee] in that case had consumed alcohol and marijuana, had a glass in the front seat which appeared to contain alcohol, and was accompanied by her young son, who was not restrained in a car seat or wearing a safety belt. [*Id.*] at 1081–1084. The Superior Court held that "driving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with other tangible *indicia* of unsafe driving. *Id.* at 1083. The Superior Court noted that "undoubtedly there are certain drivers who will exhibit safer driving conduct while legally intoxicated than certain drivers do when they are sober." *Id.* at 1083 n. 4. In the instant case, there is no evidence that [Appellee] has any history of unsafe driving or that she was driving in an unsafe manner on May 13th. The child was restrained in a car safety seat and did not show any signs of distress. The fact that [Appellee] was intoxicated is not enough to show that she was aware of any danger to the child, because there is no evidence of unsafe driving.

Regarding the third prong, [Appellee] had restrained the child properly in her car seat. [Appellee] did not fail to act, and there is no evidence that this action was "so lame or meager" that she could not have reasonably expected it to protect the child's welfare.

**2.** Appellee's DUI offense is not at issue in this appeal.

While the Court does not condone driving under the influence with a child in the vehicle, there is not enough evidence to charge endangering the welfare of a child based on intoxication alone. There must be some additional evidence of unsafe driving that threatens the child's physical or psychological welfare.

(Trial Court Opinion at 3–4). There is no dispute regarding Appellee's duty of care. We respectfully disagree, however, with the court's analysis on the second and third aspects of the endangering offense.[3] *See Retkofsky, supra.*

¶ 13 Here, the Commonwealth presented probable cause that Appellee knowingly placed the child in a motor vehicle, and Appellee drove the car when her BAC was significantly over the legal limit. The child's mother and a police officer witnessed Appellee drive to her home and exit her minivan. When Appellee apologized to the child's mother, the officer smelled alcohol on Appellee's breath. Appellee then failed field sobriety tests. Shortly after Appellee arrived at her home, Appellee's BAC was tested at .252%.

¶ 14 The Commonwealth can show intent or frame of mind through circumstantial evidence of Appellee's conduct. *See Matthews, supra, Pond, supra.* Under the totality of the circumstances, the Commonwealth provided probable cause that Appellee knowingly put the child at risk. *See Pond, supra.* Given Appellee's high level of inebriation, the Commonwealth offered probable cause that Appellee knew she was drunk. Any distraction while driving could have resulted in the child's serious bodily injury or death. The issue was not whether the child's welfare was actually harmed, but whether Appellee exposed the child to the risk of harm. *See Wallace, supra. See also Retkofsky, supra* at 1100

(recognizing "[i]t would have taken only a trivial event, such as a child or pet darting from the side of the road in front of [Appellee's van], to precipitate a vehicular swerve and/or crash, with the likely result of injury to [the child].").

¶ 15 The Commonwealth also offered probable cause that Appellee took inadequate steps to protect the child's welfare under the circumstances of this case. Appellee's placement of the child in a safety car seat represented the only effort Appellee took to protect the child from an obvious risk of harm. This effort was nothing more than the same effort the law requires of all drivers. Under the circumstances of this case Appellee had to take steps reasonably calculated to achieve success in protecting the child. *See id.; Pahel, supra.* We emphasize the Commonwealth's burden at this stage of the prosecution was to demonstrate probable cause for each element of the endangering offense, which the Commonwealth accomplished. *See Retkofsky, supra.* The Commonwealth did not have to prove the endangering offense beyond a reasonable doubt at this juncture. *See Williams, supra.*

¶ 16 Based upon the foregoing, we hold the trial court improperly dismissed the charge of endangering the welfare of children, because the Commonwealth made out a *prima facie* case for that offense. Accordingly, we reverse the court's order dismissing the charge and remand for further proceedings.

¶ 17 Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

**3.** We reject the trial court's analogy to *Mastromatteo,* as that case involved another stat-

ute and a distinct procedural posture with different appellate standards.