## Commonwealth v. Welk

*Charles Rieck IV, assistant district attorney,* for Commonwealth.

*Vincent J. Quinn,* for defendant.

ASHWORTH, *J.,* August 17, 2009—Richard Nelson Welk has filed an amended petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-46. For the reasons set forth below, the amended petition will be denied without hearing.[1]

## I. BACKGROUND

On November 2, 2005, a criminal complaint was filed against Welk charging him with aggravated indecent

---

1. Under Rule 907 of the Pennsylvania Rules of Criminal Procedure, a PCRA court may dispose of post-conviction collateral relief petitions without a hearing if it is satisfied after reviewing the materials submitted that no genuine issues of material fact exist and that petitioner is not entitled to post-conviction relief. Pa.R.Crim.P. 907. See *Commonwealth v. Camps,* 772 A.2d 70, 75 (Pa. Super. 2001) (there is no absolute right to an evidentiary hearing on a PCRA petition).

assault, indecent assault and corruption of minors.[2] The basis for these charges was an allegation that between September 2 and 3, 2005, Welk engaged in sexual contact with his niece, B.C.,[3] who was 9 years of age at the time the offenses occurred and developmentally disabled. These offenses occurred at Welk's residence in Mountville, Pennsylvania.

The child victim, B.C., was interviewed on September 8, 2005, by Detective C. Michael Phenneger of the Manor Township Police Department, along with Emily Bingeman and Colleen Regan, Lancaster Children and Youth Agency (C&YA) caseworkers. During this interview, B.C. disclosed that while staying the previous weekend at the residence of her "Uncle Richard," he had inappropriate sexual contact with her.

On September 13, 2005, Welk was interviewed by Detective Phenneger concerning the allegations made by B.C. After being advised of his *Miranda* rights and waiving those rights, Welk provided a statement to Detective Phenneger in which he admitted that it was possible that he had touched B.C.'s buttocks, breasts and vaginal area during the time period that B.C. had reported.

The child victim was next interviewed and physically examined by Dr. Cathy J. Hoshauer, an expert in pediatrics and child abuse, on September 25, 2005. B.C. disclosed inappropriate sexual contact by "Uncle Richard" to Dr. Hoshauer consistent with that described to

2. 18 Pa.C.S. §3125(b), 18 Pa.C.S. §6301(a)(1), 18 Pa.C.S. §3126(a)(7), respectively.

3. Because of the nature of the offenses in this case, we will refer to the victim by her initials only.

Detective Phenneger, Emily Bingeman and Colleen Regan. Dr. Hoshauer also found physical evidence supporting B.C.'s statements.

Charges were filed against Welk on November 2, 2005, and he was arrested in St. Louis, Missouri, on December 2, 2005. A preliminary hearing was scheduled for February 15, 2006, but was continued indefinitely pending a ruling on the Commonwealth's motion to allow a child witness to testify under the "Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act," 42 Pa.C.S. §5985. A hearing on that motion was held on March 16, 2006, before the Honorable Paul K. Allison. On March 20, 2006, Judge Allison signed an order granting the Commonwealth's motion. Thereafter, the preliminary hearing was held on May 10, 2006, at which time a prima facie case was established, and all charges were bound over to the court of common pleas.

Several defense continuances ensued. On October 13, 2006, an appointment was made with Kerri Stanley at the Lancaster County Children's O.A.S.I.S.,[4] regarding another matter involving the victim, B.C. When Ms. Stanley, a forensic interviewer, questioned B.C. about allegations of photographic exploitation, B.C. disclosed that her "Uncle Richard" had inappropriate sexual contact with her.

On February 5, 2007, the Commonwealth filed a petition to admit out-of-court statements under the "Tender

---

4. O.A.S.I.S. is a child advocacy center where investigations of child abuse are conducted through forensic interviews of children between the ages of 4 and 14 who have been referred either by Lancaster County C&YA or a law enforcement agency. (N.T., trial at 134-36.)

Years Hearsay Exception," 42 Pa.C.S. §5985.1. A hearing was held on the Commonwealth's petition on March 2, 2007, before the Honorable Joseph C. Madenspacher. On March 5, 2007, Judge Madenspacher entered an order granting the petition, having found that the statements made by the child victim to Dr. Cathy Hoshauer, Kerri Stanley, Emily Bingeman and Detective Phenneger were relevant, and that the time, content and circumstances of the statements provided sufficient indicia of reliability for their admission pursuant to 42 Pa.C.S. §5985.1.

Following a jury trial before the undersigned on March 7 and 8, 2007, Welk was found guilty of all charges. A pre-sentence investigation report was ordered. The court also ordered that a sexual offender assessment be completed prior to sentencing. The Sexual Offenders Assessment Board determined that Welk did not meet the criteria to be classified as a sexually violent predator, as set forth in 42 Pa.C.S. §9795.5 et seq.

At the sentencing hearing on June 11, 2007, the court imposed a sentence of seven to 14 years incarceration on the aggravated indecent assault charge, plus concurrent sentences of 16 to 32 months each on the indecent assault (victim under 13 years) charge and the corruption of minors charge. A timely post-sentence motion was filed on June 20, 2007, in which Welk claimed the verdicts in this case were against the weight of the evidence and requested the court grant judgment of acquittal of all charges against him. This request was denied on June 21, 2007. Welk was represented at the trial and sentencing by the public defender's office of Lancaster County, specifically, Daniel E. Kaye, Esquire.

A notice of appeal was timely filed by Welk on July 20, 2007.[5] On June 25, 2008, a three-judge panel of the Superior Court affirmed the judgment of sentence in an unpublished memorandum opinion. A petition for allowance of appeal was denied by the Pennsylvania Supreme Court on December 17, 2008. Welk was represented on direct appeal by the public defender's office, specifically, MaryJean Glick, Esquire.

On January 15, 2009, Welk filed a timely[6] pro se petition for post-conviction collateral relief raising issues of ineffective assistance of trial counsel, violation of his constitutional rights, imposition of an illegal sentence, and improper obstruction by government officials of his right to appeal. Pursuant to Rule 904(A) of the Pennsylvania Rules of Criminal Procedure, Vincent J. Quinn, Esquire, was appointed to represent Welk on his collateral claims.

On June 26, 2009, Attorney Quinn filed an amended petition in which he raised three issues: (1) trial counsel

---

5. Welk filed a Rule 1925(b) statement which set forth seven bases for appeal: (1) the court erred in finding that the child victim would be permitted to testify by contemporaneous alternative method; (2) the court erred in ruling that the testimony of Stanley and the videotape of her interview with the child victim was admissible; (3) the court erred in refusing to dismiss juror no. 7 for cause; (4) the court erred in permitting Bingeman to testify regarding hearsay statements of B.C.'s brother and Lorraine Welk, which were made to her by B.C.; (5) the court erred in denying defense counsel's motion for judgment of acquittal; (6) the jury's verdicts of guilty were against the weight of the evidence; and (7) the court erred in giving a "consciousness of guilt" instruction to the jury.

6. We note that petitioner's PCRA petition was filed within one year of the date his judgment became final. As such, his petition was filed in a timely manner. 42 Pa.C.S. §9545(b).

was ineffective in his cross-examination of the child victim; (2) trial counsel was ineffective for failing to request a competency hearing of the child victim; and (3) trial counsel was ineffective for failing to file a motion in limine or to object to the introduction of that portion of petitioner's statement that referred to prior bad acts. A timely response to the amended petition was received from the Commonwealth on July 27, 2009. This matter is now ripe for disposition.

## II. ELIGIBILITY FOR PCRA RELIEF

A petitioner seeking relief pursuant to the PCRA is eligible only if he pleads and proves, by a preponderance of the evidence, that (1) he has been convicted of a crime under the laws of this Commonwealth and is currently serving a sentence of imprisonment, probation or parole for the crime, (2) his conviction has resulted from one or more of the enumerated errors or defects found in section 9543(a)(2) of the PCRA, (3) he has not waived or previously litigated the issues he raises, and (4) the failure to litigate the issue prior to and during trial, or on direct appeal could not have been the result of any rational, strategic, or tactical decision by counsel. 42 Pa.C.S. §9543(a)(2)-(4).

A petitioner has previously litigated an issue if (1) the highest appellate court in which a petitioner could have had review as a matter of right has ruled on the merits of the issue, *Commonwealth v. Romero*, 595 Pa. 275, 287, 938 A.2d 362, 369 (2007), or (2) the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa.C.S. §9544(a); *Commonwealth v. Jones*, 932 A.2d 179, 180 (Pa. Super. 2007).

With respect to claims that have not been previously litigated, a petitioner must also demonstrate that the claims have not been waived. A petitioner has waived an issue if the petitioner could have raised the issue but failed to do so before trial, on appeal, or in a prior state post-conviction proceeding. 42 Pa.C.S. §9544(b); *Jones,* 932 A.2d at 180. Waiver, however, will be excused under the PCRA if the petitioner can meet the conditions of section 9543(a)(3)(ii) or (iii)[7] or by making a showing of ineffective assistance of counsel.

## III. DISCUSSION

### A. *Ineffective Assistance of Counsel*

Petitioner claims that he is entitled to relief for the reason that he was denied the effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article V, Section 9 of the Pennsylvania Constitution.[8] See 42 Pa.C.S. §9543(a)(2)(ii). See also, *Commonwealth v. Wilkerson,* 490 Pa. 296, 299, 416 A.2d

---

7. Section 9543(a)(3) provides:

"[T]hat the allegation of error has not been previously litigated and one of the following applies: . . . (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual. (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a state procedural default barring federal habeas corpus relief." 42 Pa.C.S. §9543(a)(3).

8. The Pennsylvania Constitution Article V, Section 9 guarantees: "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be provided by law; and there shall be other such rights of appeal as may be provided by law."

477, 479 (1980). In a collateral attack on the effectiveness of counsel, the courts presume counsel is effective and the petitioner has the burden of proving otherwise. *Commonwealth v. Rios,* 591 Pa. 583, 599, 920 A.2d 790, 799 (2007); *Commonwealth v. Pond,* 846 A.2d 699, 708 (Pa. Super. 2004).

To overcome this presumption, the petitioner must establish three factors: (1) the underlying claim has arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Collins,* 598 Pa. 397, 408-409, 957 A.2d 237, 244 (2008); see also, 42 Pa.C.S. §9543(a). The failure to satisfy any of these prongs will cause the entire claim to fail. *Commonwealth v. Bridges,* 584 Pa. 589, 596, 886 A.2d 1127, 1131 (2005).

In determining whether counsel's action was reasonable, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Washington,* 592 Pa. 698, 712-13, 927 A.2d 586, 594 (2007). To demonstrate prejudice, the petitioner must show that there is a reasonable probability that "but for counsel's error or omission, the result of the proceeding would have been different." *Collins, supra* at 409, 957 A.2d at 244.

## 1. Cross-Examination of Child Victim

Initially, petitioner claims trial counsel was ineffective in his cross-examination of the child victim. Within his petition, Welk complains that his victim was not con-

fronted with some inconsistencies between her testimony at the preliminary hearing and her testimony at trial.

At trial, the child victim testified that petitioner touched her inside her private parts. (N.T., trial at 73, 75.) She claimed that she actually remembered petitioner performing the acts on her. (*Id.* at 84.) At the preliminary hearing, the child victim claimed that she was asleep at the time petitioner performed the acts upon her and that her 5-year-old cousin told her that petitioner had touched her in the inappropriate way. (N.T., preliminary hearing at 30-31, 34-35.) The transcript of the preliminary hearing was available at time of trial and the testimony was admissible as a prior inconsistent statement. Accordingly, petitioner claims counsel was ineffective for failing to introduce the preliminary hearing transcript into evidence.

Contrary to petitioner's assertions, trial counsel did confront the child victim on cross-examination with these inconsistencies in the preliminary hearing transcript.

"Q. . . . Now, [B.C.], I asked you a few minutes ago if you remember if you were awake or asleep, and I believe your answer was that you were awake when this happened; right?

"A. Yes.

"Q. Do you remember a few months back coming to the courthouse, and you were sitting in that room where you are now? Do you remember that?

"A. Yes.

"Q. And you were telling us what happened just the way you are today, looking in a camera and talking to

us, and you could see us in the monitor there? Do you remember that?

"A. Yes.

"Q. And do you remember [the assistant district attorney] asked you some questions and you answered them? Do you remember that?

"A. Yes.

"Q. And then I asked you some questions?

"A. Yes.

"Q. And we might have told you, I don't remember, but we might have, that there was a court reporter who was taking down all of the questions and all of the answers? Did we tell you that?

"A. I don't remember.

"Q. Okay. Do you know that there's a court reporter today who is writing down all of the questions and all of the answers?

"A. I don't know.

"Q. Okay. [B.C.], I think I was asking you some questions that day when you came to the courthouse before. A question I asked you was, Were you asleep when it happened, when Uncle Richard touched you, or were you awake? And—

"A. Awake.

"Q. And your answer at that time was asleep. Do you remember saying that?

"A. I don't remember.

"Q. Okay. Is it possible at some time during this you were awake and some time you were asleep?

"A. Yes.

"Q. Yes, it's possible?

"A. Yes.

"Q. Now, I think at some point your cousin G., Little G., told you what happened; is that right?

"A. Yes.

"Q. And I think I had asked you at that hearing, is what you are saying here today, do you remember that, or is it because Little G. told you something happened?

"A. I remember that.

"Q. And everything you are telling us today you remember; right?

"A. Yes." (N.T., trial at 88-90.)

The conflicting preliminary hearing testimony of the child victim was certainly introduced to the jury through this cross-examination. Thus, it cannot be said that petitioner suffered any prejudice from the failure of trial counsel to introduce portions of the preliminary hearing transcript into evidence. Trial counsel was able to effectively demonstrate to the jury that the child victim had told a different story at the preliminary hearing which took place approximately 10 months before the trial. Thus, this issue lacks merit.

## 2. Need for a Competency Hearing

Next, petitioner contends that trial counsel was ineffective for failing to request a full competency hearing

of the child victim at the time of trial. It is well-settled that the determination of whether a child is competent to testify is within the sound discretion of the trial court, and an appellate court should not interfere with the lower court's ruling absent a manifest abuse of discretion. *Commonwealth v. Hunzer,* 868 A.2d 498, 507 (Pa. Super. 2005). In making such a determination, the court should be guided by the following principles:

"Competency of a witness is presumed, and the burden falls on the objecting party to demonstrate incompetency. When the witness is under 14 years of age, there must be a searching judicial inquiry as to mental capacity, but discretion nonetheless resides in the trial judge to make the ultimate decision as to competency. In making its determination, the court must inquire whether the child possesses: (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that she is called to testify about and (3) a consciousness of the duty to speak the truth." *Id.* (quoting *Commonwealth v. D.J.A.,* 800 A.2d 965, 969 (Pa. Super. 2002) (citations and quotations omitted)).

Petitioner's child victim—less than 10 years of age at the time the sexual assault occurred and 11 years of age at the time of trial—satisfied these requirements, not only at trial, but also at numerous prior hearings.

At trial, B.C. testified that she understood the duty to speak the truth (N.T., trial at 68-69), and demonstrated the ability to communicate and observe and remember the sexual assault. As such, there was no need to conduct a further colloquy.

Furthermore, B.C. testified previously. She testified at a Pennsylvania Uniform Child Witness Testimony by Alternative Methods hearing on March 16, 2006. Judge Allison conducted an on-the-record colloquy at that hearing wherein B.C. demonstrated that she understood what an oath was, and demonstrated the ability to communicate and remember the assault. (See N.T., Pennsylvania Uniform Child Witness Testimony by Alternative Methods hearing at 31-34.) B.C. also testified at a preliminary hearing on May 10, 2006. At that hearing a colloquy was conducted to determine her competency and she demonstrated again that she was competent to testify. (N.T., preliminary hearing at 4-9.)

By the time of trial it was clear to the undersigned that B.C. was competent to testify and no purpose would be served by an additional formal colloquy. As such, petitioner's claim of counsel ineffectiveness for failing to request a full competency colloquy is without merit.

### 3. Prior Bad Acts Evidence

Lastly, petitioner charges trial counsel with ineffectiveness for failing to file a motion in limine or to object to the introduction of that portion of petitioner's statement that allegedly referred to prior bad acts. During the testimony of Detective Michael Phenneger, he introduced petitioner's statement to the police. A portion of the statement which was introduced into evidence at trial reads as follows:

"Question, is anything else going to be revealed by A. about her being touched inappropriately by you?

"Answer, I dried her off, and I dried everything. If she would say something, it would have happened either then or when she was on my lap.

"Question, are there any other allegations that might come to light concerning these three children?

"Answer, not unless it has something to do with the drying off after the bath. When J. takes baths, I dry him off, too." (N.T., trial at 159.)

Petitioner contends that this statement contains irrelevant and highly prejudicial evidence of prior bad acts committed by petitioner against other children. The Commonwealth argues that this statement cannot be classified a prior bad act. I must agree.

Pennsylvania Rule of Evidence 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The testimony in question—petitioner's reference to the accidental touching of another child while giving the child a bath—does not fall within this prohibition as it is not evidence of a crime, wrong or an act which the Commonwealth sought to use "to show action in conformity therewith."

The fact that petitioner gave the victim's brother and sister, his niece and nephew, a bath is not a crime, nor can it be classified as a wrong. Therefore, the testimony clearly did not fall within the prohibition of Pa.R.E. 404(b). While bathing children is certainly an act, it cannot be said that the Commonwealth sought to use this evidence to prove the allegations at hand. The testimony regarding the bathing of children involved two different children than the victim. Furthermore, petitioner's assault of his victim did not occur during bath time. Finally, petitioner's statement was that there may have been accidental touching immediately following these baths. (N.T., trial at 159.) Petitioner was convicted of a night-

time, intentional assault of a different child than the children mentioned in the testimony. Petitioner's crime and the testimony complained of share no common characteristics, other than both involve children.

As it cannot be said that the alleged improper testimony fell within the exclusion provided for by Pa.R.E. 404(b)(1), trial counsel will not be deemed ineffective for failing to raise a meritless claim.

## B. *After-Discovered Evidence*

Petitioner's final claim is that he is entitled to a new trial to consider Lorraine Welk's affidavit of June 15, 2009, in which his ex-wife asserts that she observed no improper conduct by her then husband toward the child victim in this case while she baby-sat her sister's three children on September 2 and 3, 2005.[9] When seeking a new trial based on after-discovered evidence, the peti-

---

9. The after-discovered evidence provision of the PCRA provides that:

"(a) General rule.—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

"(1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

"(i) currently serving a sentence of imprisonment, probation or parole for the crime;

"(ii) awaiting execution of a sentence of death for the crime; or

"(iii) serving a sentence which must expire before the person may commence serving the disputed sentence.

"(2) That the conviction or sentence resulted from one or more of the following: . . .

"(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. §9543(a).

tioner must establish that the evidence: (1) could not have been obtained at or prior to trial through reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely compel a different verdict if a new trial were granted. *Commonwealth v. Johnson,* 600 Pa. 329, 359-60, 966 A.2d 523, 541 (2009); *Commonwealth v. Pagan,* 597 Pa. 69, 106, 950 A.2d 270, 292 (2008).

At the time of the alleged assault, Lorraine Welk was married to and living with petitioner. At the time of trial, Ms. Welk was residing outside of the Commonwealth and petitioner contends that he "could not have located her and determine [sic] the substance of her testimony even through due diligence." (See amended motion at ¶38.) In the affidavit attached as exhibit "B" to petitioner's amended motion, Ms. Welk states:

"During the overnight hours of September 2, 2005 and on September 3, 2005, the children were in the apartment with me and Richard. While the children were at our apartment, I witnessed no improper conduct by Richard. I saw him have no inappropriate contact with any of the children. Richard Welk was never alone with the children while they were in our apartment. I was up most of the night with A. since she had a bad nosebleed. I was asleep for no more than an hour or two the entire evening.

"From December of 2005 until July of 2008, I was residing in the states of Arkansas and Missouri. Neither Richard nor any of my family members knew where I was living during that period of time." (See Welk affidavit, attached to petitioner's amended motion as exhibit "B".)

Petitioner claims that this eyewitness testimony of his wife is after-discovered evidence. I cannot agree. Obviously, petitioner was aware of his wife's presence in the residence where his assault of the minor victim occurred. Affidavits of witnesses whose identities were known at trial are not after-discovered evidence. *Commonwealth v. Hayward,* 437 Pa. 215, 216-17, 263 A.2d 330, 331 (1970). Moreover, even assuming the veracity of Ms. Welk's affidavit, there is nothing contained therein that petitioner either was not aware of, or could not have been aware of, prior to trial. As such, the claim must fail as an after-discovered evidence claim.[10]

## III. CONCLUSION

For the reasons noted above, Welk's amended petition of post-conviction collateral relief will be denied without a hearing.

Accordingly, I enter the following:

## ORDER

And now, August 17, 2009, it is hereby ordered that Richard Nelson Welk's Post Conviction Relief Act petition is dismissed without a hearing. There are no genuine issues concerning any material fact; petitioner is not entitled to post-conviction collateral relief; and no purpose would be served by any further proceedings.

---

10. Furthermore, Ms. Welk's account of her supposed unavailability is not credible. She absents herself from the Commonwealth just months after these charges are brought against her husband, apparently with the knowledge that she could clear him. Ms. Welk clearly knew of petitioner's criminal proceedings in the fall of 2005, but did not come forward with this alleged exculpatory evidence until 2009.

Pursuant to Pa.R.Crim.P. 907(4), this court advises petitioner that he has the right to appeal from this order. Petitioner shall have 30 days from the date of this final order to appeal to the Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of appellate rights.