J-S28033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WAYNE O. CRIPPEN | : | |
| | : | |
| Appellant | : | No. 1205 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 19, 2019
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0000161-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WAYNE O. CRIPPEN | : | |
| | : | |
| Appellant | : | No. 1206 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 19, 2019
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0000411-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WAYNE O. CRIPPEN | : | |
| | : | |
| Appellant | : | No. 1207 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 19, 2019
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0000580-2017

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                           :        PENNSYLVANIA
                                           :

               v.                                :

                                           :

WAYNE O. CRIPPEN                     :
                                         :

            Appellant             :       No. 1208 MDA 2019

Appeal from the Judgment of Sentence Entered March 19, 2019
in the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000597-2017

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 29, 2020**

Wayne O. Crippen ("Crippen") appeals from the judgments of sentence entered following his convictions of one count each of possession of a small amount of marihuana, possession of drug paraphernalia, and stop signs and yield signs[1] at Lycoming County docket number CR-161-2017 ("161-2017"); two counts of delivery of a controlled substance, and one count each of possession of a controlled substance and criminal use of a communication facility[2] at Lycoming County docket number CR-411-2017 ("411-2017"); three counts each of delivery of a controlled substance, possession of a controlled substance with intent to deliver, possession of a controlled substance, possession of drug paraphernalia, and criminal use of a

---

[1] 35 P.S. § 780-113(a)(31)(i), (a)(32); 75 Pa.C.S.A. § 3323(b).

[2] 35 P.S. § 780-113(a)(16), (a)(16); 18 Pa.C.S.A. § 7512(a).

communication facility[3] at Lycoming County docket number CR-580-2017 ("580-2017"); and one count each of criminal use of a communication facility, possession of a controlled substance, and endangering the welfare of children[4] at Lycoming County docket number CR-597-2017 ("597-2017"). We affirm.

In its Opinion, the trial court set forth the factual background of this appeal, which we adopt as though fully set forth herein. *See* Trial Court Opinion (Post-sentence Motions), 6/25/19, at 1-5.

Crippen was subsequently charged with the above-mentioned offenses. On July 6, 2017, Crippen filed Omnibus Pretrial Motions, including, in relevant part, a Motion to Suppress certain out-of-court and in-court identifications of him as the perpetrator of the charges filed against him, and a Motion to Suppress physical evidence seized during the December 6, 2016, traffic stop that is the basis of the charges at 161-2017. Following a hearing and the submission of briefs by the parties, the trial court denied each of the Motions. On July 16, 2018, the trial court granted a Motion by the Commonwealth, over Crippen's objection, to consolidate the four docket numbers for trial.

---

[3] 35 P.S. § 780-113(a)(30), (a)(16), (a)(32); 18 Pa.C.S.A. § 7512(a).

[4] 18 Pa.C.S.A. § 7512(a); 35 P.S. § 780-113(a)(16); 18 Pa.C.S.A. § 4304(a).

Following a jury trial, Crippen was convicted of the above-mentioned offenses. The trial court deferred sentencing for the preparation of a pre-sentence investigation report ("PSI"). The trial court subsequently sentenced Crippen to an aggregate term of 10½ to 21 years in prison, with credit for time served. Relevantly, at 411-2017, the trial court sentenced Crippen to 36 to 72 months in prison for his conviction of delivery of a controlled substance.

Crippen filed timely post-sentence Motions, in which he (1) challenged the sufficiency and weight of the evidence underlying his conviction of delivery of a controlled substance, endangering the welfare of children, and criminal use of a communication facility; (2) contested the trial court's denial of his pre-trial Motion to Suppress, Motion to dismiss the seated jury panel, and Motion for mistrial; and (3) requested modification of his sentence. Following a hearing and submission of briefs by the parties, the trial court denied the Motions. On July 19, 2019, Crippen filed timely Notices of Appeal,[5] and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Crippen raises the following questions for our review:

---

[5] Crippen filed four Notices of Appeal, one at each docket number and each listing only one docket number. Therefore, **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) (holding that "where a single order resolves issues arising on more than one docket," an appellant's failure to file separate notices of appeal for each case will result in quashal of the appeals) is not implicated.

I. Whether the [trial c]ourt erred in granting the Commonwealth's [M]otion to [C]onsolidate?

II. Whether the [trial c]ourt erred in denying the [M]otion to [S]uppress in-court and out-of-court identifications of [Crippen]?

III. Whether the [trial c]ourt erred in failing to grant suppression of physical evidence in [161-2017]?

IV. Whether the [trial c]ourt erred in denying [Crippen]'s Motion for Mistrial based on a *Brady*[6] violation?

V. Whether the verdicts of guilty were against the weight of evidence presented at trial?

VI. Whether the sentence was unreasonable and excessive?

VII. Whether a new trial should be granted based on after-discovered evidence?

Brief for Appellant at 5 (footnote added).

In his first claim, Crippen alleges that the trial court erred in granting the Commonwealth's Motion to Consolidate the Criminal Informations filed against him. Brief for Appellant at 14-15. Crippen argues that (1) evidence of each offense would not have been admissible in a trial of the other offenses; (2) there was significant danger of confusion by the jury; and (3) Crippen was prejudiced as a result of the consolidation of the Informations. *Id.* Specifically, Crippen claims that the various purported drug transactions contained substantial differences, such as the phone number used to arrange the transaction and the vehicle used to meet at the transaction location, which may have confused the jury. *Id.* at 14

---

[6] *See Brady v. Maryland*, 373 U.S. 83 (1963).

In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.P. 583.

Our Supreme Court has established a three[-]part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine

> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

**Commonwealth v. Thomas**, 879 A.2d 246, 260 (Pa. Super. 2005) (some citations and quotation marks omitted); **see also Commonwealth v. Ferguson**, 107 A.3d 206, 210 (Pa. Super. 2015) (stating that "[t]he prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.").

Here, the trial court found that the evidence of each trial would have been admissible at the other; there was no danger of confusion; and Crippen was not prejudiced by the consolidation of the offenses. **See** Trial Court

- 6 -

Opinion (Post-sentence Motions), 6/25/19, at 9-10. We incorporate herein the trial court's analysis. ***See id.*** Based upon our review, we conclude that the trial court did not abuse its discretion in denying Crippen's claim. ***See Thomas***, ***supra***; Pa.R.Crim.P. 582(A)(1)(a).

In his second claim, Crippen alleges that the trial court erred in denying his pre-trial Motion to Suppress certain in-court and out-of-court identifications of him as the perpetrator of the crimes. ***See*** Brief for Appellant at 15-16. Crippen claims that the identification of him by confidential informant Autumn Day ("CI Day") was tainted by a suggestive photographic lineup. ***Id.*** According to Crippen, CI Day gave an out-of-court identification that missed details regarding Crippen's appearance, and was then shown a photograph of Crippen in a suggestive lineup. ***Id.*** The photograph was lost prior to trial, but CI Day was permitted to identify Crippen in court as the perpetrator. ***Id.*** at 16. Crippen argues that CI Day's out-of-court identification was not distinguishable enough to purge the taint of the suggestive photo lineup, and CI Day should not have been permitted to provide an in-court identification. ***Id.***

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court

- 7 -

is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the trial court are subject to plenary review.

***Commonwealth v. Wright***, 224 A.3d 1104, 1108 (Pa. Super. 2019) (brackets and ellipses omitted).

To establish reliability in the wake of a suggestive identification, the Commonwealth must prove, through clear and convincing evidence, the existence of an independent basis for the identification. An independent basis is established when the in-court identification resulted from the criminal act and not the suggestive identification procedure. To determine if an identification resulted from the criminal act (and, therefore, has an independent basis), the trial court must consider the following factors:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

***Commonwealth v. Davis***, 17 A.3d 390, 394 (Pa. Super. 2011) (citations, quotation marks and brackets omitted).

Here, the trial court cogently and thoroughly addressed Crippen's claim, and found that CI Day had an independent basis for her in-court identification that was separate, and sufficiently distinguishable, from the tainted out-of-court identification. **See** Trial Court Opinion (Omnibus Pretrial Motions), 6/20/18, at 5-7. We incorporate herein the trial court's analysis.

*See id.* Based upon our review, we conclude that the trial court did not abuse its discretion in denying Crippen's Motion to Suppress CI Day's identifications. *See Davis*, *supra*.

In his third claim, Crippen alleges that the trial court erred in denying his Motion to Suppress certain physical evidence discovered by police during the December 6, 2016, traffic stop. Brief for Appellant at 17-18. Crippen claims that the police officer who searched Crippen lacked reasonable suspicion that he was armed and dangerous. *Id.* at 17. Crippen argues that the officer's sole support for the search was information that Crippen was involved in the drug trade. *Id.* Crippen further asserts that the officer should not have seized the marijuana and U.S. currency that was found in Crippen's pocket, since neither "was immediately apparent as contraband." *Id.* at 18.

In its Opinion, the trial court summarized the evidence presented at the suppression hearing, stated the applicable law, and cogently and thoroughly addressed Crippen's claims. *See* Trial Court Opinion (Omnibus Pretrial Motions), 6/20/18, at 10-13. We agree with the sound reasoning and determinations of the trial court, as set forth in its Opinion, and therefore affirm on this basis with regard to Crippen's third claim. *See id.*

In his fourth claim, Crippen alleges the trial court erred in not declaring a mistrial due to a *Brady* violation. Brief for Appellant at 19-20. Crippen claims that near the end of the first day of trial, the Commonwealth

provided him with a page of a police report that had not previously been provided in discovery. *Id.* at 19. According to Crippen, the document contained potentially exculpatory information, including the name of a person, provided to the police by Crippen, who may have committed the crimes with which Crippen was charged; and, the phone number used to arrange the drug-buys that led to Crippen's arrest. *Id.* Crippen argues that this information was potentially exculpatory, potentially affected the outcome of the trial, and should have resulted in a mistrial. *Id.* at 20.

In its Opinion, the trial court summarized the evidence contained within the previously missing page of the police report, stated the applicable law, cogently and thoroughly addressed Crippen's claims, and concluded they lack merit. *See* Trial Court Opinion (Post-sentence Motions), 6/25/19, at 11-12. We agree with the sound reasoning and determinations of the trial court, as set forth in its Opinion, and therefore affirm on this basis with regard to Crippen's claim. *See id.*

In his fifth claim, Crippen alleges that the verdict was against the weight of the evidence. Brief for Appellant at 21-22. Crippen claims that the Commonwealth's case heavily relied on the incredible testimony of the confidential informants. *Id.* Specifically, Crippen states that both confidential informants provided inaccurate identifications of Crippen. *Id.* Accordingly, Crippen argues, the jury's verdict shocks the conscience, and a new trial should be ordered. *Id.* at 22.

The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, the jury was free to assess the credibility of the Commonwealth's witnesses in rendering the verdict. *See Gonzalez*, *supra*. Based on the record, the jury's decision is supported by the evidence, and does not shock one's sense of justice. *See Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review."). Thus, the trial court did not abuse its discretion in denying Crippen's weight of the evidence claim.

In his sixth claim, Crippen alleges that the trial court abused its discretion in sentencing him in the high end of the aggravated range on his conviction for delivery of a controlled substance at 411-2017. Brief for Appellant at 23-24. This claim challenges the discretionary aspects of Crippen's sentence.

"An appeal raising the discretionary aspects of sentencing is not guaranteed as of right; rather, it is considered a petition for permission to appeal." *Commonwealth v. Mulkin*, 228 A.3d 913, 916 (Pa. Super. 2020). Prior to reaching the merits of a discretionary sentencing issue,

> [w]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Grays*, 167 A.3d 793, 815-16 (Pa. Super. 2017). (citation omitted).

Crippen filed a timely Notice of Appeal, preserved his challenge in a post-sentence Motion, and included a Rule 2119(f) Statement within his brief. Further, Crippen's claim that the sentencing court relied on impermissible factors when it sentenced him in the aggravated range raises a substantial question. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (2006) (stating that a claim that the sentencing court "consider[ed] factors already included within the sentencing guidelines as the sole reason

- 12 -

for increasing or decreasing a sentence to the aggravated or mitigated range" raises a substantial question).  Thus, we will review Crippen's claim.

Our standard of review is as follows:

Sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias, or ill will.  It is more than just an error in judgment.

*Commonwealth v. Downing*, 990 A.2d 788, 792-93 (Pa. Super. 2010) (citation omitted).

When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant.  In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.  It must be demonstrated that the court considered the statutory factors enunciated for determination of sentencing alternatives, and the sentencing guidelines.  Additionally, the court must impose a sentence which is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant.

*Commonwealth v. McClendon*, 589 A.2d 706, 712 (Pa. Super. 1991) (internal citations and quotation marks omitted).  Moreover, "where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed."  *Downing*, 990 A.2d at 794 (quotation marks and citations omitted).

Here, the record reflects that the trial court considered the particular circumstances of the offense (including the fact that the substance Crippen had been convicted of delivering contained fentanyl), Crippen's prior criminal record, education, family background, work history, and potential for rehabilitation, as well as Crippen's statement at sentencing, and his general character. *See* N.T., 3/19/19, at 2-6, 14-16. Further, the trial court considered the Sentencing Guidelines, Crippen's prior record score and rehabilitative needs, the seriousness of his crimes, and the need to protect the public. *Id.* Thus, the trial court properly considered all the statutory factors before sentencing Crippen. *See McClendon*, *supra*.

Moreover, because the trial court had the benefit of a pre-sentence investigation report ("PSI"), which the trial judge expressly stated that he had reviewed, *see* N.T., 3/19/19, at 3, it is presumed that the court was aware of relevant information regarding Crippen's character, and weighed those considerations along with any mitigating factors. *See Downing*, 990 A.2d at 794; *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (stating that "[t]he sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors.") (citation omitted). Accordingly, we conclude that the trial court's sentence was not improperly excessive, and Crippen's discretionary sentencing challenge fails.

In his seventh claim, Crippen alleges that he should be granted a new trial because he has discovered new evidence that proves someone else committed the crimes of which he was convicted. Brief for Appellant at 24-27. According to Crippen, the missing police report page, which the Commonwealth disclosed during trial, indicated that a third-party, Nadi Hatchett ("Hatchett"), was identified by police as being associated with the phone number used in the drug transactions at issue. *Id.* at 24. Crippen states that after trial, he used this information to discover that (1) the vehicle used during the transactions in question was insured by and titled to Hatchett; (2) Hatchett has a similar facial appearance and age as Crippen; and (3) the vehicle used in the December 2, 2016, transaction was rented by a friend of Hatchett.[7] Crippen argues that this evidence was unavailable at the time of trial, and is potentially exculpatory. *Id.* at 25-26.

Pennsylvania Rule of Criminal Procedure 720(C) states that "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C); *see also id.*, Note (stating after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process….").

---

[7] Crippen also claims that he "had a front tooth extracted, evidenced by dental records." Brief for Appellant at 25. However, it is unclear how this constitutes newly-discovered evidence.

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

*Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super. 2007).

Here, by his own admission, Crippen was the individual who had advised police that Hatchett was associated with the phone number in question. *See* Brief for Appellant at 19 (wherein Crippen states that the missing police report page "indicated that *the defendant* had reported the name of a different individual who may have been the perpetrator of these drug transactions") (emphasis added); *see also* "Post Sentence Motion Claim of After-Discovered Evidence", 1/16/20, at Exhibit I (wherein the missing police report page indicates that Crippen had advised police, "[t]he owner of the [cell phone number in question] is similar looking to him. [Crippen] identified the owner of that cell phone number as [Hatchett]." Thus, the record reflects that Crippen possessed this evidence prior to trial. *See Rivera*, *supra*. Accordingly, Crippen's claim lacks merit, and we deny Crippen relief.

Judgment of sentence affirmed.

- 16 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/29/2020

**IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA    :
                                       :       **CR-161-2017**
                                       :       **CR-411-2017**
                                       :       **CR-580-2017**
                                       :       **CR-597-2017**

         **v.**                                    :

**WAYNE CRIPPEN,**                        :       **POST SENTENCE MOTION**
         **Defendant**                        :

## <u>OPINION AND ORDER</u>

Wayne Crippen (Defendant), through Counsel, filed a Post-Sentence Motion Pursuant to Pa. R. Crim. P. 720 on March 29, 2019. A hearing on the Motion was held on June 6, 2019. In his Motion, Defendant raised the following issues: The evidence was insufficient to sustain the verdict; The verdict was against the weight of the evidence; This Court erred when it denied Defendant's Omnibus Pretrial Motion;[1] This Court erred when it granted the Commonwealth's Motion to Consolidate; This Court erred in denying Defendant's pre-trial motion to dismiss the seated jury panel; This Court erred when it denied Defendant's motion for a mistrial for an alleged *Brady* violation; and his sentence was unreasonable and excessive. For the following reasons Defendant's Motion is denied.

**Background**

On February 1, 2019, Defendant was convicted on the above docket numbers of four counts of Delivery of a Controlled Substance,[2] four counts of Possession of a Controlled Substance with the Intent to Deliver,[3] four counts of Criminal Use of a Communication

---

[1] This Court relies on its Opinion and Order dated June 20, 2018, which previously Denied Defendant's Omnibus Pretrial Motion, in denying this portion of Defendant's Post-Sentence Motion.
[2] 35 P.S. § 780-113(a)(30).
[3] 35 P.S. § 780-113(a)(30).



Facility,[4] four counts of Possession of a Controlled Substance,[5] one count of Endangering the Welfare of Children,[6] one count of Possession of a Small Amount of Marijuana,[7] and four counts of Possession of Drug Paraphernalia.[8] Detective Cassandra McCormack (McCormack) of the Lycoming County District Attorney's Office Narcotics Enforcement Unit (NEU). Autumn Day (Day), Officer Matthew Keller (Keller) of the NEU, Former Detective James Capello (Capello) of the NEU, Officer Jeremy Brown (Brown) of the NEU, Agent Justin Snyder (Snyder) of the Williamsport Bureau of Police (WBP), Trooper Edward Dammer (Dammer) of the Pennsylvania State Police (PSP), Kelly Miller (Miller), and Corporal Tyler Morse (Morse) of the PSP testified on behalf of the Commonwealth, while no testimony was provided by Defendant. That testimony and the evidence presented at trial established the following.

On November 16, 2016, McCormack was working with confidential informant (CI). Day, and conducted a strip search of her person, searched anything she brought with her, and her vehicle before setting up any controlled buys or giving Day any prerecorded buy money. This process occurred on November 16, 2016, December 6, 2016, and January 4, 2017. Day had a number, (570) 980-3497, she associated with an individual named "Mikey," whom she had bought from heroin from on approximately twelve prior occasions. Day identified "Mikey" as Defendant at the trial. On November 16, 2016 Day called Defendant, who she knew as "Mikey," to buy $100 worth of heroin. Day then met Defendant, got in the back of his white four-door car, exchanged the money for the suspected heroin, and got out of the vehicle.

---

[4] 18 Pa. C.S. § 7512(a).
[5] 35 P.S. § 780-113(a)(16).
[6] 18 Pa. C.S. § 4304(a)(1).
[7] 35 P.S. § 780-113(a)(31)(i).
[8] 35 P.S. § 780-113(a)(32).

2

Upon returning to a predetermined location, Day gave Capello eleven bags of suspected heroin stamped "First 48." The eleven bags actually contained a mixture of cocaine and fentanyl. On December 6, 2016 Day again called (570) 980-3497, but received no answer. Day then called (267) 778-8088, which she associated with an individual named "Wiz." Day stated that "Mikey" answered the phone and they had made an arrangement to purchase $100 worth of heroin. Day meet Defendant, who was driving a tan colored SUV, and they conducted a driver side to driver side transaction of the prerecorded $100 for the suspected heroin. Upon returning to a predetermined location, Day gave Capello eleven bags of suspected heroin stamped with a blue lightbulb. The eleven bags contained a mixture of heroin and fentanyl. On January 4, 2017, Day set up another controlled buy by contacting Defendant through his (570) 980-3497 number. This time they agreed to buy a "bun" or ten bags for $90. Day later contacted Defendant, who had not yet arrived, and asked for $100 worth of heroin instead. Defendant gave her a different location and Defendant met her in a blue Honda. Day got in the back passenger side of the vehicle and exchanged the money for heroin. Upon returning to a predetermined location, Day gave Capello twelve bags of heroin stamped "SRT 8." The twelve bags contained heroin.

At the time of the controlled buys Day only knew Defendant as "Mikey" and on November 16, 2016 described him as a black male with a medium build, facial hair and glasses. Keller, Capello, Brown and Snyder all testified regarding their surveillance and involvement during the controlled buys. They testified to a similar account of events. They also explained during surveillance that no one individual had a visual of Day the entire time and that it is difficult to video and photograph transactions without drawing attention during surveillance.

3

Following the controlled by that occurred on December 6, 2016, Snyder contacted Dammer to conducted a vehicle stop of the tan SUV and to get a proper identification of Defendant. Dammer conducted a stop after the SUV rolled through a stop sign. At that time, Dammer contacted Snyder to let him know he smelled marijuana and whether he wanted him with a search to proceed or not. Defendant was then searched and found to have marijuana in his pocket and the prerecorded money from that day's controlled buy with Day. There was nothing else in the vehicle. Dammer had both Snyder and the Montoursville Police Department call (267) 778-8088 that was used in the controlled buy with Day. Both times the cellphone taken off Defendant began to ring. An issue was raised at trial based on the motion video recording (MVR) from that day. It appeared the individual stopped was missing a tooth, but Dammer explained the individual he stopped that day was not missing any teeth, that Defendant was the person he stopped that day, and it is most likely pixilation from the MVR causing the black gap.

The last two individuals to testify for the Commonwealth were Miller and Morse regarding a separate controlled buy that occurred on December 5, 2016. On that date, Miller met with Morse to conduct a controlled buy. Miller contacted an individual in his phone known as "D Boy Car Nick" whom he has purchased heroin from approximately a dozen times in the past. The number for "D Boy Car Nick" was the same (570) 980-3497 number Day used to make controlled buys on November 16, 2016 and January 4, 2017. Miller asked for a "brick" or fifty bags of heroin for $400. Morse and Miller rode together to meet "D Boy Car Nick" to purchase the heroin. Morse gave Miller $400 of prerecorded currency. A vehicle went by them and honked its horn indicating they should follow. When it stopped Miller got out of the car and into the back seat of the other vehicle and exchanged the money for the suspected

4

heroin. Miller stated when he got in the vehicle a child of about five or six was sitting in the back next to him, unrestrained on top of a pile of money. Back at the station Morse looked over the suspected heroin and found there were forty-six bags, each stamped with either a red or blue lightbulb. The forty-six bags contained a mixture of heroin and fentanyl. Miller described "D Boy Car Nick" as a light skinned black male that was stalky with a beard and glasses. On January 4, 2017 Morse spoke with Snyder and Brown about their ongoing investigation and had them provide him with a photo of Defendant. On January 5, 2017 Miller was shown a photo array, which he could not positively identify "D Boy Car Nick" and asked if he could see pictures of individuals with glasses. Miller than went through a second photo array of individuals with glasses and positively identified Defendant as the individual that sold him the suspected heroin on December 5, 2016. Miller also identified Defendant as the individual he knew as "D Boy Car Nick" who sold him the suspected heroin on December 6, 2016 at trial.

**Discussion**

*Whether the Evidence was Insufficient to Sustain a Conviction*

Defendant asserts the Commonwealth's evidence presented at trial was insufficient to justify a verdict of guilty and therefore requests either Judgment of Acquittal, relief in Arrest of Judgment or a New Trial. When evaluating the sufficiency of the evidence a Court "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Brown*, 52 A.3d 320, 323 (Pa. Super. 2012). All reasonable inferences are drawn in favor of the verdict winner. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013). "[T]he evidence established at

5

trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Brown*, 52 A.2d at 323.

An individual commits the crime of Delivery of a Controlled Substance if the person transfers from one person to another a drug, substance, or immediate precursor, which under the Controlled Substance, Drug, Device and Cosmetic Act includes cocaine, heroin, and fentanyl. 35 P.S. §§ 780-102(b), 780-104(1)(ii)(10), (1)(ii)(23), (2)(i)(4), 780-113(a)(30). Testimony provided by Day established that on November 16, 2017, December 6, 2016, and January 4, 2017 Defendant sold her what she believed to be heroin. That on those days she either got in his vehicle or through a driver side window to driver side window exchanged prerecorded funds for suspected heroin. Lab reports submitted at trial established that the baggies contained cocaine and heroin, heroin and fentanyl, and heroin. Similarly, Miller testified that Defendant, on December 5, 2016, exchanged a "brick" of suspected heroin for prerecorded currency. Lab reports submitted at trial showed the substance in those baggies was heroin and fentanyl. Therefore evidence was submitted for the jury to find Defendant guilty on every element of Delivery of a Controlled Substance.[9]

An individual commits the crime of Criminal Use of a Communication Facility if the person uses "a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or . . . The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section." 18 Pa. C.S. § 7512(a). Day

---

[9] This also means enough evidence was submitted to establish the underlying crimes of Possession of a Controlled Substance with the Intent to Deliver and Possession of a Controlled Substance, as the charges merge. Summarily Possession of Drug Paraphernalia is also satisfied by the packaging of the controlled substances alone although the two crimes do not merge for sentencing. *See Commonwealth v. Pitner*, 928 A.2d 1104, 1111 (Pa. Super. 2007).

6

testified that she spoke on the phone with who she knew as "Mikey," then "Mikey" is the individual that sold her the drugs on all three occasions, and she identified Defendant as "Mikey." Similarly Miller testified that he spoke on the phone with "D Boy Car Nick," then "D Boy Car Nick" is the person who sold him the drugs, and he identified Defendant as "D Boy Car Nick." Therefore the four convictions of Criminal Use of a Communication Facility are supported by the evidence submitted at trial.

Endangering the Welfare of a Child occurs when an individual knowingly violates a duty of care, protection, or support and the parent is the person supervising the welfare of the child and the child is under the age of eighteen. 18 Pa. C.S. 4304(a). Miller testified that a young child was sitting in the back seat of the vehicle, where he got in, was sitting on a pile of money. Defendant was conducting hand to hand drug transactions right in front of/over the head of the child. The evidence was sufficient from Miller's description to establish the child was under eighteen and Defendant, who was the driver of the vehicle, was supervising the child. The evidence was also sufficient for a jury to conclude that Defendant was knowingly endangering the child by having them sit on the back seat on a pile of cash, not properly restrained, having individuals looking to buy narcotics get in the back seat right next to the child, and then to be selling fentanyl laced heroin right in front of/over the head of the child. Therefore there was sufficient evidence presented at trial for a jury to convict Defendant of Endangering the Welfare of a Child.[10]

Lastly, Defendant disputes his charges of Possession of a Small Amount of Marijuana, and Possession of Drug Paraphernalia, from the traffic stop that occurred on December 6,

---

[10] Jury's attentiveness is demonstrated in the verdict. They found Defendant guilty of Endangering the Welfare of Children, but not the aggravator of a child under six, because the only evidence was provided was Miller's description that the child was about five or six.

7

2016. Dammer testified that after stopping his vehicle and searching Defendant's person on that date he located a small amount of marijuana in a Ziploc bag in his pocket. Therefore there is sufficient evidence to establish Defendant possessed a small amount of marijuana and paraphernalia, the Ziploc bag.

Defendant raises a last issue under this subsection, stating that the Commonwealth did not provide required discovery including preliminary transcripts. Defense counsel never raised the issue that discovery was lacking until this Motion. Additionally, this Court would note that the preliminary hearing transcripts were attached as Exhibits E and G in the Commonwealth's Response to Defendant's Post Suppression Hearing Brief, which was available to Defendant. Therefore Defendant's contention has no merit.

## *Whether the Verdict was Against the Weight of the Evidence*

Defendant contends that the verdict reached by the jury was against the weight of the evidence provided at trial. More specifically, Defendant argues both Day and Miller failed to testify credibly and mistakenly identified Defendant. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Knox*, 50 A.3d 749, 754 (Pa. Super. 2012). This finding rest exclusively with the jury as the trier of fact. *Commonwealth v. Rice*, 902 A.2d 542, 546 (Pa. Super. 2006).

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super. 2007).

On cross examination Defense Counsel elicited from Day that she was doing this

8

because she had pending charges, she was a past heroin user, she was expecting consideration in exchange for her testimony, and she was acting as a CI for police with other potential cases. Defense counsel also brought up that she could not recall the locations of the controlled buys in past testimony and she described Defendant differently in past testimony. Defense counsel during cross examination of Miller elicited similar evidence. Miller had pending charges, was a past heroin user, had conducted multiple controlled buys for Morse, and he was expecting leniency in exchange for his testimony against Defendant. Additionally, Defense counsel pointed out on cross examination how Miller had difficulty providing the color of the car in his past testimony and describing Defendant on prior occasions. Defense counsel on cross examination revealed enough evidence for the jury to make a proper determination on whether Day and Miller were fabricating their testimony in exchange for consideration and/or whether they in fact viewed Defendant or someone else at the time of the controlled buys. The trier of fact was provided enough information to believe all, part, or none of the testimony provided by Day and Miller and chose in their sole discretion to believe their testimony. The jury's determination does not shock one's sense of justice to the extent this Court will overturn their determination. Therefore the Court finds Defendant's claim that the verdict was against the weight of the evidence is meritless.

***Whether This Court Erred in Granting the Commonwealth's Motion to Consolidate***

Defendant next contends this Court erred by granting Commonwealth's Motion to Consolidate the above informations. Offenses may be tried together if: "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or the offenses charged are based on the same act or transaction." Pa. R. Crim. P. 582(a)(1). After making that evaluation a "court must

9

also consider whether consolidation would unduly prejudice the defendant." *Commonwealth v. Knoble*, 188 A.3d 1199, 1205 (Pa. Super. 2018). The Commonwealth typically may not present evidence that a defendant committed a crime for the purposes of proving they committed another crime as well, but exceptions exists when the evidence of "the other crimes tend to prove: motive; intent; absence of mistake or accident; a common scheme, plan, or design embracing the commission of two or more crimes so related that proof of one tends to prove the others; or the identity of the person committing the charged crime." *Commonwealth v. Taylor*, 445 A.2d 174, 177 (Pa. Super. 1982).

The informations were properly consolidated. Mistake of identity was a large portion of Defendant's defense. The evidence could be submitted to show this is not a mistake of identity through a common scheme, plan or design. Both Day and Miller identified Defendant as the individual that sold them suspected heroin. The two CIs both testified that they both contacted Defendant on the phone using (570) 980-3497, that they received the suspected heroin in bags stamped the same way just a day apart, and the manner in meeting Defendant was similar. Additionally, the stop conducted by Dammer was to retrieve identification of the individual who just sold suspected heroin to Day and during that stop officers verified (267) 778-8088 as the number of the phone on Defendant, which was the number used to set up the controlled buy on that day. The informations would have been admissible at separate trials, there was no danger of jury confusion or failure to separate the charges, and Defendant was not unduly prejudiced by the informations consolidation.

***Whether This Court Erred in Denying Defendant's Motion for New Jury Panel***

Defendant orally raised an objection to the jury array on the record following jury selection and January 16, 2019, and filed a Motion to that effect on January 28, 2019.

10

Defendant contends that this Court erred in not granting his Motion for New Jury Panel.

> Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than 5 days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.

> Pa. R. Crim. P. 625(B)(1).

When a defendant fails to raise a timely objection to a jury array that defendant "has waived any objection he may have had." *Commonwealth v. Jackson*, 486 A.2d 431, 436 (Pa. Super. 1984). Courts have found that an objection is not timely if it is not brought within the proper time period prior to jury selection. *See id.* (untimely when "several prospective jurors had already been questioned"); *Commonwealth v. Brown*, 578 A.2d 461, 467 (Pa. Super. 1990) (untimely when raised on the third day of jury selection). Defendant raised his objection at the conclusion of jury selection and it was therefore untimely and deemed waived.

## *Whether This Court Erred by Denying Defendant's Motion for a Mistrial*

Defendant next argues the Court erred in denying his request for a mistrial at the beginning of the second day of the trial. Defendant did so after the Commonwealth supplied them with a page of a police report from Morse that morning. The Commonwealth explained that they were also unaware of the report until Morse provided it to them that morning. The relevant portion from the report at issue reads as follows:

> During the preliminary arraignment on 03/01/17, [Defendant] was very adamant that he was not the person that had delivered to my CI. After the preliminary hearing, I told him he was in the vehicle and he said that he was not. I told him Emily rented the car for him and he said that he did not know Emily. I showed him a picture of her and he abruptly stated that that was his "brother's baby mama." We then went into the holding room at MDJ Fry's office. He continued talking that he did not sell drugs to the CI. He stated that he has never sold "dope" but he has sold marijuana. I stopped him and read him his Miranda Warnings at 1015 hours. He acknowledged his rights and stated he would talk to me. [Defendant] stated that he does know cell phone number 570-

11

980-3497. He stated that he never met the CI and the CI was wrong. The owner of the cell phone is similar looking to him. He identified the owner of that cell phone number as Nadi HACHETT . . . . He stated he would not testify in court to that information and wanted it "off the record."

Defendant claims that the above information was crucial in his defense of mistaken identity and the Commonwealth by not providing it prior to trial committed a *Brady* violation.

Defendant's claim is meritless. The key issue Defendant alleges would have helped his case is the identity of this third individual "Nadi Hachett." "There is no *Brady* violation when [a defendant] knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from non-governmental sources." *Commonwealth v. Paddy*, 15 A.3d 431, 451 (Pa. 2011). The information at issue was proffered by Defendant himself and then put into the police report. Therefore the evidence was clearly available to Defendant as he is the individual who originally presented the name to police. Defendant's Post-Sentence Motion is denied for that reason.

### *Whether the Court's Sentence was Unreasonable and Excessive*

Defendant was sentenced on March 19, 2019. Defendant received an aggregate sentence of ten and a half years to twenty-one years in state prison. Defendant was determined to have a prior record score (PRS) of five. *See* 204 N.T. 3/19/19, at 8-9. Under CR 411-2017 for the delivery of 1.42 grams of heroin and fentanyl Defendant was sentenced to thirty-six to seventy-two months. Delivery of heroin and fentanyl over one gram is an ungraded felony, which carries an offense gravity score (OGS) of seven. 204 Pa. Code § 303.15.[11] Based on Defendant's OGS and PRS of five the standard range is twenty-four to thirty months with an aggravated and mitigated range of plus or minus six months. 204 Pa. Code § 303.16(a). Under

---

[11] Defendant committed offenses prior to the enactment of current offense gravity score section, and therefore Defendant is not affected by the enhancement for fentanyl laced controlled substances.

12

CR 580-2017 for the delivery of .55 grams of cocaine and fentanyl, .47 grams of heroin and fentanyl, and .2 grams of heroin, Defendant was sentenced to twenty-four to forty-eight months on each count. All three deliveries are an ungraded felonies, which carry an offense gravity score (OGS) of six. 204 Pa. Code § 303.15. Based on Defendant's OGS and PRS of five the standard range for each count is twenty-one to twenty-seven months with an aggravated and mitigated range of plus or minus six months. 204 Pa. Code § 303.16(a). Under CR 597-2017 for Endangering the Welfare of a Child. Defendant was sentenced to eighteen to thirty-six months. Endangering the Welfare of a Child is a misdemeanor of the first degree, which carries an offense gravity score (OGS) of five. 204 Pa. Code § 303.15. Based on Defendant's OGS and PRS of five the standard range is twelve to eighteen months with an aggravated and mitigated range of plus or minus three months. 204 Pa. Code § 303.16(a). All above counts were ordered to run consecutive to one another. [12]

"All numbers in sentence recommendations suggest months of minimum confinement." 204 Pa. Code § 303.9(e). Sentencing has been found to be within the sound discretion of the trial court judge. *Commonwealth v. Allen*, 24 A.3d 1058, 1065 (Pa. Super. 2011). The Court had the benefit of a presentence investigation report prior to sentencing and considered all relevant factors in fashioning its sentence. With the exception of Defendant's sentence under CR 411-2017, his minimum sentences are within his recommended standard range. Therefore those sentences are not unreasonable and/or excessive. *See Commonwealth v. Raven*, 97 A.3d 1244, 1254-55 (Pa. Super. 2014) (sentencing a defendant within the standard range after considering all evidence at sentencing is not unreasonable or excessive). As for

---

[12] Remainder of Defendant's charges either were ordered to run concurrent to one another, merged for purposes of sentencing, or Defendant was given a fine, which does not affect the aggregate sentence and therefore is not at issue.

13

Defendant's sentence under CR 411-2017, this Court sentenced Defendant to a minimum of thirty-six months, the permissible aggravated minimum range. "A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed" and must demonstrate that reason on the record. *Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa. Super. 2009). This Court on the record stated the reason for its aggravated sentence. Defendant has refused to be accountable and take responsibility for his actions. N.T. 3/19/19, at 14-15. Defendant has continued this pattern of drug dealing for approximately twenty years. *Id.* at 15. Lastly, the Court considered the fact that the heroin delivered was laced with fentanyl, which although his offenses occurred prior to the enhanced offense gravity scores, this Court still took into consideration in reaching its conclusion on an appropriate sentence. *Id.*

Defendant also challenges this Court's imposition of his sentence consecutively, as opposed to concurrently. It is well established it is within the sound discretion of the sentencing court whether to make sentences consecutive or concurrent under 42 Pa. C.S. § 9721(a). *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa. Super. 2006). The Court agrees with the Commonwealth's position that if it were to make Defendant's sentences concurrent it would diminish the seriousness of each offense.

## ORDER

**AND NOW**, this 25th day of June, 2019, based on the foregoing opinion, Defendant's Motion for Post Sentence Relief is hereby **DENIED.**

Pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(4), Defendant is hereby notified of the following: (a) the right to appeal this Order within thirty (30) days of the date of entry; (b) the right to assistance of counsel in the preparation of the appeal; (c) if indigent, the

14

right to appeal *in forma pauperis* and to proceed with assigned counsel as provided in Pennsylvania Rule of Criminal Procedure 122; and (d) the qualified right to bail under Pennsylvania Rule of Criminal Procedure 521(B).

BY THE COURT,

Nancy L. Butts, P.J.

cc:     Ryan Gardner, Esq.
        DA (NI)
NLB/kp

15

**IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA      :

v.      :      CR-580-17
      :      CR-411-17
      :      CR-597-17
WAYNE CRIPPEN      :      CR-161-17
      :      Omnibus Pretrial Motions

**OPINION AND ORDER**

On July 6, 2017, Defendant, Wayne Crippen, filed an Omnibus Pretrial Motion. Defendant is seeking to suppress out-of-court and in-court identifications of him made by two confidential informants. Additionally, Defendant is seeking to suppress physical evidence seized by Pennsylvania State Police Trooper Edward Dammer. Finally, Defendant challenges the determination of *prima facie* on the charge Endangering the Welfare of Children. Hearings on the motions were held on October 27, 2017 and March 9, 2018. The parties requested the opportunity to brief the issues with the last brief due May 28, 2018.

**Background**

At Docket CR-580-17, Defendant is charged with six counts of Possession of a Controlled Substance with Intent to Deliver,[1] three counts of Criminal Use of a Communication Facility,[2] and three counts of Possession of a Controlled Substance[3] and Possession of Drug Paraphernalia.[4] These charges arise out of the Lycoming County Narcotic Enforcement Unit's use of a confidential informant to make controlled purchases of heroin from Defendant on November 16, 2016, December 6, 2016, and January 4, 2017.

---

[1] 35 P.S. §780-113(a)(30)
[2] 18 Pa. C.S.A. § 7512
[3] 35 P.S. § 780-113(a)(16)
[4] 35 P.S. § 780-113(a)(32)

SCANNED

1



At Dockets CR-411-2017 and CR-597-2017, Defendant is charged with one count of Delivery of a Controlled Substance, Heroin[5], one count of Possession with Intent to Deliver, Heroin, one count of Criminal use of a Communication Facility, one count of Possession of a Controlled Substance, and one count of Endangering the Welfare of Children[6]. These charges arise out of the Pennsylvania State Police's use of a confidential informant to make a controlled purchase of heroin from Defendant on December 5, 2016.

At Docket CR-161-2017, Defendant is charged with one count of Possession of a Small Amount of Marijuana,[7] one count of Possession of Drug Paraphernalia, and one summary offense, Duties at Stop Sign.[8] These charges arise out of a traffic stop conducted by the Pennsylvania State Police on December 6, 2016.

**Findings of Fact**

In November of 2016, Lycoming County Narcotics Enforcement Unit (NEU) Detective James Capello (Capello) began conducting an investigation of an individual who had sold drugs to a confidential informant working with the NEU. The confidential informant, Autumn Day (Day), told Capello that the individual went by the name "Mikey" and described him as being approximately 5'9" with glasses, a short beard, and short hair. Day also stated that Mikey conducted business through the phone number 570-980-3497. Capello utilized Day to conduct three controlled purchases of heroin for the NEU on November 16, 2016, December 6, 2016, and

---

[5] 35 P.S. §780-113(a)(30)
[6] 18 Pa. C.S.A. § 4304
[7] 35 P.S. § 780-113(a)(31)
[8] 75 Pa.C.S.A. § 3323 (b)

2

January 4, 2017. On each occasion, Day used her cellular phone to contact Mikey in order to set up a purchase of heroin. Prior to each controlled buy, Capello searched Day and her vehicle; Day was then provided with pre-recorded police funds to conduct the controlled purchases. During each controlled buy, surveillance was maintained over Day and Capello was in contact with those conducting surveillance. After the controlled purchases, Day returned to Capello and handed in the purchases; in each case the controlled substance was field-tested positive for heroin.

On December 6, 2016, Williamsport Bureau of Police Officer Justin Snyder (Snyder), who was acting in an undercover capacity with the NEU, assisted Capello and other officers in maintaining surveillance of Day and Mikey. After the controlled purchase, Snyder enlisted the assistance of Pennsylvania State Police Trooper Edward Dammer (Dammer) in order to determine Mikey's true identity, providing Dammer with the information regarding the controlled purchase which had just taken place. Dammer monitored Mikey's vehicle and observed him violate the motor vehicle code, Title 75 Pa.C.S.A. § 3323(b), by not stopping his vehicle until he had driven over a crosswalk after a stop sign. Dammer subsequently conducted a traffic stop on Mikey's vehicle. As a result, Mikey's identity was determined to be the Defendant.

During the stop, Dammer smelled marijuana in the vehicle. Dammer asked the Defendant to step out of the vehicle; Defendant had a passenger who remained in the vehicle. Defendant did so and stated that he did not have anything on his person. Defendant then immediately turned around and put his hands in the air without Dammer requesting him to do so. Dammer then commenced a pat down of

3

Defendant. He asked Defendant what was in his pocket, to which Defendant responded that it was marijuana. Dammer told Defendant that Defendant did not have to give him the marijuana, but Defendant elected to do so. Dammer ultimately seized the marijuana and US currency which was the pre-recorded police funds which had been used by Day during the controlled purchase of heroin.

Also in December of 2016, Pennsylvania State Police Trooper Tyler Morse (Morse) was conducting an investigation into an individual who was selling drugs. Morse utilized a confidential informant, Kelly Miller (Miller) to conduct a controlled purchase of heroin on December 5, 2016. After this purchase, Miller provided Morse with a description of the individual from whom he had purchased the heroin. Miller testified that during the controlled purchase, a young female child was in the back seat of Defendant's car sitting on a pile of money. Miller further testified that during the controlled buy, he opened the back passenger door and was partially inside the car; Defendant then looked back at him and gave him the drugs.

Morse was able to get a positive identification of the individual as Defendant because the cell phone number which Miller used to contact the individual for the controlled purchase was the same number that the NEU was using and the NEU had identified that number as belonging to Defendant. After identifying Mikey as Defendant, the NEU provided Morse with a photograph of Defendant. Morse indicated that the photograph fit the description that Miller had provided after the controlled purchase on December 5, 2016. Morse then administered two photographic line-ups to Miller, who was able to identify Defendant as the individual whom he had purchased the heroin from during the controlled purchase.

4

**Discussion**

I.    **Suppression of Identification Evidence**

a. *An in-court identification of Defendant by the Confidential Informant is allowed as the Confidential Informant has an independent basis for the identification*

Defendant argues that the Court should suppress the proposed in-court identification of Defendant by the confidential informant conducted at Docket Number 580-17.

The Pennsylvania Supreme Court has ruled that an in-court identification of a defendant is admissible following a tainted out-of-court identification if, under the totality of the circumstances, the court determines that the in-court identification has an independent basis "sufficiently distinguishable to be purged of the primary taint." *Commonwealth v. Abdul-Salaam*, 678 A.2d 342, 248 (Pa. 1996). The Court may consider several factors in determining whether a witness had an independent basis for the in-court identification. These factors include:

> (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness during the confrontation; and (5) the length of time between the crime and the confrontation.

*Id.*

In this case, Capello utilized a NEU confidential informant, to conduct controlled purchases of heroin from a drug dealer who sold drugs to the NEU and went by the name Mikey. Capello utilized the CI to conduct multiple controlled

5

purchases of heroin on November 16, 2016, December 6, 2016, and January 4, 2017. On December 6, 2016, Snyder of the Williamsport Bureau of Police, acting undercover, maintained surveillance of Mikey's vehicle from the conclusion of the controlled buy until Dammer conducted a traffic stop on Mikey's vehicle. As a result, Dammer confirmed that Mikey was the Defendant. Capello then showed his CI a picture of Defendant, who also positively identified him as Mikey. However, since the Commonwealth no longer has a copy of the photograph used by Capello in this out-of-court identification, the Commonwealth has conceded that the out-of-court photographic identification of Defendant by this CI should be suppressed, thus compelling the need for a valid in-court identification of Defendant.

CI Day testified that, prior to working with the NEU, she had purchased heroin from Mikey approximately 12 times, during which she was able to view Mikey either face-to-face or from the side for approximately one to two minutes. Further, Day testified that the controlled purchases she conducted for Capello were all during daylight hours and that she was able to view Mikey for approximately one minute each time. Moreover, for the first and third controlled buys, Day was in Mikey's car and during the second controlled buy she did a hand-to-hand transaction through car windows. Thus, Day had ample opportunity to view Defendant at the time of the crime.

Additionally, Day's prior description of Defendant was accurate although not overly detailed. Day initially described Mikey as approximately 5'9" with short hair and a short beard or scruff, as well as the additional detail that he wore glasses. After the second controlled buy, she stated that Mikey's glasses were black wire framed,

6

and that he wore a black coat and jeans. During her testimony, Day described Defendant as approximately 5'10" to 5'11," of medium build, with dark skin, a unique face, short hair, and a short beard. While Defendant argues these are purely generic descriptions, these descriptions accurately describe Defendant and consist of enough detail to identify Defendant.

Further, during all three controlled purchases, Day confirmed that the person who sold the heroin to her was Mikey, who was confirmed to be Defendant. Although Day's interactions with Defendant were approximately two years prior to her testimony, the Court notes that Defendant was not in the court room during her testimony. Day was able to describe Defendant accurately and with sufficient detail. This suggests both that Day's degree of attention to Defendant was high and that the length of time between the interaction and her testimony was not an issue, as she was able to accurately give a description both to Capello at the time of the controlled purchases and in court during her testimony. As Day has not yet made an in-court identification, the length of time between the crime and the confrontation cannot be fully taken into account. However, as Day was able to offer a sufficiently detailed description of Defendant during her testimony, the Court does not anticipate the delay to present an issue.

Therefore, since the factors concerning Day's in-court identification of Defendant are satisfied, the Court will allow the proposed in-court identification by Day during the trial.

7

### b. *The photographic line-up was not unduly suggestive and the confidential informant's identification of Defendant is allowed*

Defendant argues that the Court should suppress the out-of-court identification of Defendant made by the CI Miller at case numbers 411-17 and 597-17.

An identification is admissible if, under the totality of the circumstances, it is deemed to be reliable. *Commonwealth v. Jaynes*, 135 A.3d 606, 610 (Pa. Super. 2016). Suggestiveness alone does not warrant the exclusion of an identification. *Id.* The identification evidence should not be suppressed unless the facts demonstrate that the identification procedure was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth v. Fulmore*, 25 A.3d 340 (Pa. Super. 2011). The purpose of suppressing identification evidence is to prevent improper police action; where no such action exists, suppression is not warranted. *Jaynes*, supra. at 610.

Further, due process does not require that all pretrial identifications be done under laboratory conditions. *Jaynes*, supra. at 610. Photographs used in out-of-court identifications are not unduly suggestive if the defendant's picture "does not stand out more than the others" and the people in the pictures depicted "all exhibit similar facial characteristics." *Commonwealth v. Fisher*, 769 A.2d 1116 (Pa. 2001). Differences in the size of pictures used in a photographic line-up is not suggestive if the differences do not cause a misidentification of the defendant. *Commonwealth v. Wilcox*, 392 A.2d 1294, 1297 (Pa. 1978).

Defendant argues that the out-of-court identification by confidential information Miller should be suppressed because the photographic line-ups conducted by Morse

8

were unduly suggestive. Defendant asserts that the use of only Defendant's picture in both photographic line-ups, the size differences in the pictures provided in the second photographic line-up, and the typing on Defendant's picture all render the procedure unduly suggestive. However, case law does not support Defendant's reasoning.

Morse administered two photographic line-ups to Miller. In the first line-up, Morse utilized a picture of Defendant provided by the NEU and prepared a photographic line-up from the Pennsylvania Justice Network ("JNET") arrest photos which matched Defendant's description. Miller was unable to identify Defendant in the first line-up, stating that he needed to see a line-up in which the individuals wore glasses. Morse then found a different picture of Defendant wearing glasses and prepared a second line-up from JNET arrest photos of individuals matching Defendants description and also wearing glasses. As the only available photograph of Defendant wearing glasses was not from JNET, Morse cut both Defendant's picture and the JNET photographs out, attempting to make them as uniform as possible. Morse then shuffled them randomly; unaware that Defendant's photograph was in the same numbered spot in both line-ups. Morse then administered the second photo line-up. Miller identified Defendant immediately upon seeing Defendant's photograph, however, Morse instructed Miller to look through the remaining pictures to be sure of his identification. Miller did so and confirmed his identification of Defendant.

The Court finds that Defendant's photograph did not unreasonably stand out from the other pictures; all of the individuals in both photographic line-ups had similar

9

facial characteristics. Defendant's assertion that the line-ups were suggestive due to Defendant's picture being the only one used in both line-ups is not supported by the facts. Morse did not use the same photograph of Defendant in both line-ups. Additionally, Morse could not reasonably be expected to find photographs of the same individuals from the first line-up wearing glasses to be used for the second line-up. Therefore, Morse's actions were not improper.

Further, as stated in *Wilcox*, a size difference in pictures is not suggestive unless the difference causes a misidentification of the defendant. Miller testified at the suppression hearing that the size difference of the photographs as well as any typing on the photographs did not register as he was focused on the faces and characteristics of the individuals and therefore had no bearing on his identification of Defendant in the photographic line-up.

Therefore, the photographic line-up conducted by Morse was not unduly suggestive and the out-of-court identification of Defendant by Miller is allowed.

## II. Traffic stop of Defendant's vehicle by Trooper Dammer

### a. *The stop of Defendant's vehicle was lawful*

Defendant argues that Trooper Dammer's stop of Defendant's vehicle on December 6, 2016 was illegal.

The Supreme Court of Pennsylvania has held that if an officer with sufficient probable cause or reasonable suspicion directs another officer to act in his stead, even if the arresting officer does not have the requisite information, the arrest is legal. *Commonwealth v. Yong*, 177 A.3d 876, 889-90 (Pa. 2018). Additionally, a stop

10

of a vehicle is valid if the stop is based on objective facts that create a reasonable suspicion that the occupant of the vehicle is presently involved in criminal activity. *Commonwealth v. Murray*, 331 A.2d 414 (Pa. 1975). Further, an officer has probable cause to effectuate a traffic stop if the driver violates a section of the Motor Vehicle Code. *Commonwealth v. Gleason*, 785 A.2d 983, 989 (Pa. 2001).

The Court finds that the stop of Defendant's vehicle by Dammer was lawful. Under the collective knowledge doctrine[9], Dammer had sufficient probable cause to stop Defendant's vehicle and to arrest him. On December 6, 2016, Snyder maintained surveillance upon Defendant and Defendant's vehicle during and following the controlled purchase. During this surveillance, Snyder contacted Dammer and supplied him with information about the investigation, including information about the controlled purchase which had just taken place. Snyder then requested Dammer to assist with identifying Defendant, but directed Dammer not to arrest Defendant in doing so. This course of events supports the finding that Dammer had both probable cause to stop and to arrest Defendant, even if he was directed not to facilitate an arrest of Defendant.

In the alternative, even had Dammer not had the requisite probable cause to stop Defendant, he did have the requisite reasonable suspicion to do so. The suspicion that Defendant had just taken part in the criminal activity of the sale of drugs would allow for a legal investigative stop of Defendant's vehicle. Also in the

---

[9] Pennsylvania courts have cited to *Whiteley* and *Hensley* for the notion that an arresting officer, lacking sufficient personal knowledge amounting to probable cause, may rely on direction from an officer possessing the requisite knowledge without running afoul of the Fourth Amendment. Citing *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), *Yong*, 130 A.3d at 306.

11

alternative, because Dammer observed the defendant violate Title 75 Pa.C.S.A. § 3323(b), Therefore, Dammer had probable cause to stop Defendant's vehicle and will not be suppressed.

### b. *The pat down of Defendant during the traffic stop was lawful, therefore the physical evidence obtained as a result of the search is admissible*

Defendant argues that even if the stop of Defendant's vehicle by Dammer was lawful, the seizure of the U.S. Currency from Defendant during the search was unlawful. Defendant asserts that the only exception to the warrant requirement which allows for the seizure of currency is a search incident to arrest. However, Defendant offers no authority for this assertion. Alternatively, the Commonwealth argues that the search was lawful because Defendant consented to the pat down.

The Fourth Amendment protects against unreasonable searches and seizures, including in the case of a brief detention. *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *United States v. Mendenhall*, 446 U.S. 544, 551.) One such exception to the requirement of a warrant to conduct a search is voluntarily given consent. *Id.* To prove a valid consent search, the Commonwealth must prove first that the Defendant's interaction with the police was lawful. *Commonwealth v. Reid*, 811 A.2d 530, 544 (Pa. 2002). If the Commonwealth overcomes this hurdle, the Court must then consider whether the Defendant's consent was valid under the totality of the circumstances. *Id.* at 548. Consent cannot be the "result of duress or coercion, express or implied, or a will overborne-under the totality of the circumstances." *Strickler*, supra. at 901. Additionally, the Commonwealth is not

12

required to establish that the defendant knew of his right to refuse to consent in order to prove voluntary consent. *Id.*

The Court finds that Defendant validly consented to the pat down by Dammer. In this case, the Court has found that the stop of Defendant's vehicle was lawful, which satisfies the first element. Next, Dammer's motor vehicle recording ("MVR") of the stop shows that Dammer did not utilize any weapons, raise his voice, or threaten Defendant or the passenger. Defendant promptly answered Dammer's questions and voluntarily exited the vehicle when requested due to the smell of marijuana which Dammer detected emanating from the vehicle. Dammer did not touch the Defendant or ask to search him; Defendant put his hands up and turned around without any instruction from Dammer. Dammer testified that these actions by Defendant led him to believe that Defendant was volunteering to be searched. Defendant did not exhibit any signs of mental or emotional distress. When Dammer patted down Defendant and asked what was in Defendant's pocket, Defendant informed Dammer that it was marijuana and voluntarily turned it over to Dammer, despite Dammer's statement that Defendant did not have to do so. In light of these facts, the Court finds that Defendant's consent was not the result of duress, coercion, or will overborne; therefore, the consent was valid and the marijuana and currency found on Defendant is allowed.

13

### III. The Commonwealth has presented sufficient evidence to support the charge of Endangering the Welfare of Children

Defendant argues that the Commonwealth did not provide sufficient evidence to sustain the charge of Endangering the Welfare of Children.

Endangering the Welfare of Children is a violation of 18 Pa.C.S.A. § 4304. The statute states the following:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18. Pa.C.S.A. § 4304(a)(1).

Additionally, the statute provides that the phrase "other person supervising the welfare of a child" means a person that provides "care ... or control of a child." 18 Pa.C.S.A. § 4304(a)(3). Pennsylvania courts have long held that a duty of care may be extended to "non-relatives who exercise some supervisory role over children." *Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa. Super. 2012).

The Supreme Court of Pennsylvania held that this statute is "given meaning by reference to common sense of the community and the broad protective purposes for which it was enacted." *Commonwealth v. Campbell*, 580 A.2d 868, 869 (Pa. Super. 1990) (citing *Commonwealth v. Mack*, 359 A.2d 770 (Pa. 1976). The court further reasoned that the purpose of juvenile statutes is "basically protective in nature." *Commonwealth v. Marlin*, 305 A.2d 14, 18 (Pa. 1973). The court explained that it is impossible to enumerate all of the adult conduct which society wants to protect children from. *Id.* This sentiment is why the state legislature attempted to

14

"prohibit a broad range of conduct in order to safeguard the welfare and security" of children. *Commonwealth v. Brown*, 721 A.2d 1105, 1106 (Pa. Super. 1998).

In order to establish that Defendant violated the statute for endangering the welfare of a child, the Commonwealth must prove, either by direct or circumstantial evidence, that Defendant had the requisite *mens rea. Commonwealth v. Winger*, 957 A.2d 325, 329 (Pa. Super. 2008). The *mens rea* for this statute is a "knowing violation of his duty of care." *Id.* The statute does not require that Defendant inflicted a physical injury upon the child or that there was a threat of imminent harm. *Commonwealth v. Wallace*, 817 A.2d 485 (Pa. Super. 2002). If Defendant knows that his actions could endanger the child, putting him or her at risk or in danger, then Defendant has violated his duty of care. *Id.* at 491-92. In order for the Commonwealth to meet its burden of establishing the intent element of the statute for endangering the welfare of a child, a three-prong test must be satisfied. The test is as follows: (1) the accused was aware of his/her duty to protect the child; (2) the accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or so meager that such actions cannot reasonably be expected to protect the child's welfare. *Bryant,* supra. at 198.

The Court finds that the Commonwealth has provided sufficient evidence to establish that Defendant had a duty of care to the child in Defendant's car and knowingly violated that duty. Defendant was the driver of the vehicle with a female passenger approximately five to seven years of age in the backseat. Common sense of the community would prescribe that an adult who is driving a motor vehicle would

15

have a duty of care towards a young passenger in the car as the driver, and not the passenger, can determine the course of the vehicle and the manner of safety in which it is driven. Defendant therefore should have readily known of the duty to protect the child who was a passenger in Defendant's car.

Further, on top of dealing drugs with the child in the car, allowing drug users to have access to the backseat where the child was seated on top of a pile of money would again go far against the common sense of the community. The possibility of a drug transaction ending in violence or murder is always possible. Persons involved in drug activity could easily threaten the welfare of the child, both psychologically and physically if the purchase did not go as planned.

Moreover, Defendant afforded no protection to the child. Defendant freely allowed CI Miller, access to the backseat of Defendant's car where the young child was sitting. Further, Defendant conducted a drug deal with the CI seated next to the child. Defendant took no action to protect the child, rather concerned only with getting the CI's money in exchange for the drugs.

Therefore, the Commonwealth has provided sufficient evidence to support the charge against Defendant of Endangering the Welfare of Children. Thus, the motion to Dismiss shall be denied.

16

## ORDER

**AND NOW**, this _20th_ day of June, 2018, after hearing and reviewing briefs submitted by counsel, the Court makes the following findings:

(1) CI Day has an independent basis for an in-court identification of Defendant, therefore an in-court identification of Defendant by Day shall be permitted;

(2) the photographic line-up administered by Trooper Morse was not unduly suggestive, therefore CI Miller's out-of-court identification is allowed;

(3) the traffic stop of Defendant's vehicle by Trooper Dammer was lawful;

(4) the pat down of Defendant by Trooper Dammer was lawful, thus the physical evidence obtained as a result of that search is allowed; and

(5) the Commonwealth has presented sufficient evidence to support the charge of Endangering the Welfare of Children.

Therefore, Defendant's Omnibus Pretrial Motions are DENIED.

By The Court,

Nancy L. Butts, President Judge

Cc: Nicole Ippolito, Esq. Assistant District Attorney
　　 Wayne Crippen, *pro se*, Lycoming County Prison

17